GEORGE HAYT, Respondent, *v.* BREWSTER, GORDON & CO., INC., Appellant.

Fourth Department, November 30, 1921.

Trial — action to recover for personal injury — physical examination of plaintiff — order may provide that examining physician take sample of blood for blood test — Code of Civil Procedure, § 873, applied.

A judge or court has the power and jurisdiction under section 873 of the Code of Civil Procedure to provide, in an order for the physical examination of the plaintiff in an action to recover damages for personal injuries, that the examining physician may take a sample of the plaintiff's blood for the purpose of examination and analysis, where a blood test is necessary to determine accurately the plaintiff's condition.

The fact that infection may be caused by the needle used in making the puncture required to draw blood sufficient for the test does not deprive the court of its power, for the statute gives to the court or judge granting the order full power to direct how the examination shall be made and, upon request of the plaintiff, may throw around the examination all known safeguards, and may require, if the plaintiff so desires, that the sample of blood be drawn by the plaintiff's own physician.

APPEAL by the defendant, Brewster, Gordon & Co., Inc., from that part of an order of the Supreme Court, made at the Monroe Special Term and entered in the office of the clerk of the county of Monroe on the 18th day of August, 1921, which

denies defendant's motion for a blood test as part of the physical examination of plaintiff.

*Webster, Meade & Straus* [*Joseph R. Webster* with him on the brief], for the appellant.

*Daniel F. Fitzgerald,* for the respondent.

HUBBS, J.:

The only question involved on this appeal is whether or not a judge or a court has power and jurisdiction under section 873 of the Code of Civil Procedure to provide, in an order for the physical examination of the plaintiff in an action to recover damages for a personal injury, that the examining physician may take a sample of the plaintiff's blood for the purpose of examination and analysis. No question is raised but what this is a proper case for a physical examination and the papers used upon the application for the order required that the order be granted. It was held at Special Term, however, that the section in question was not broad enough to justify providing in the order for an examination of the plaintiff's blood.

Under the common law in England an order to inspect the body of a party in a personal injury action was not permitted. (16 Am. & Eng. Ency. of Law [2d ed.], 811.)

The courts in several of our States decided that it was proper at common law to make such an order. In the lower courts in this State the same rule was adopted. It was finally determined by the Court of Appeals that authority did not exist at common law to make such an order. (*McQuigan* v. *D., L. & W. R. R. Co.,* 129 N. Y. 50.)

Chapter 721 of the Laws of 1893 amended section 873 of the Code of Civil Procedure by inserting therein a provision for a physical examination, before trial, of the plaintiff in a personal injury action. (See, also, Laws of 1894, chap. 428.) Under that section the practice of examining the plaintiff in such actions has become very common. The examination is permitted for the purpose of enabling the examining physician to acquire all information possible to qualify him to express an opinion as to the nature and extent of the plaintiff's injury. Examinations have, in many cases, been very thorough, exten-

sive and commensurate with the necessity. Very few cases have been reported where an attempt was made to restrict the physical examination to be made by the physician.

In the case of *Lasher* v. *Bolton's Sons* (161 App. Div. 381) the trial court granted an order permitting the defendant to make an X-ray picture of the plaintiff's foot. The order was reversed and some statements in the opinion would indicate that the learned justice who wrote it thought that the court had no authority to make such an order in any case. There, however, the plaintiff was a female, and the order did not provide that the examination should be made by a physician or surgeon of her own sex as required by said section of the Code. It also appeared that a previous examination had been had. The case cannot be considered as holding that an order cannot be made in any case to take an X-ray picture of a plaintiff's injury.

In *Gregory* v. *Acme Road Machinery Co.* (175 App. Div. 473) this court held that the plaintiff in a personal injury action could not be compelled to submit to an X-ray examination of his injured bones as a part of his physical examination before trial. The decision was based wholly upon the ground that, at that time, there was danger in taking radiographs, and that in so doing people were sometimes burned and seriously injured. Presiding Justice KRUSE stated in his opinion: " If it were absolutely certain that plaintiff would not be injured by the taking of the radiograph, I think he might be compelled to submit to the same in aid of the physical examination." Of course, at that time, the art had not been perfected, and the danger feared by the plaintiff was not wholly imaginary or unreasonable.

In the case of *Mizak* v. *Carborundum Co.* (75 Misc. Rep. 205; affd., 151 App. Div. 899) Mr. Justice POUND said: " When the nature of the proposed examination, as by the administration of anæsthetics or drops of atropine in the eye, might possibly endanger the plaintiff's health, the court will not require the hazard to be taken if the plaintiff objects."

In this case the defendant asks permission to draw a few drops of the plaintiff's blood so that the examining physician, by an analysis of it, may be aided in qualifying himself to give an opinion as an expert upon the trial. A physician, in an

affidavit submitted by the defendant upon the motion, stated that it would be necessary to make a blood test to determine accurately the plaintiff's condition. It is not claimed by the respondent, in the affidavits submitted upon the motion, that the plaintiff is in such a condition of health that such treatment would be injurious to him. Neither is it claimed in said affidavits that there would generally be any danger involved in such act.

It was argued in this court, however, that there is so much danger involved in drawing a few drops of blood by a skilled physician that it should not be required, and that the statute in question is not broad enough to justify such an order.

The Legislature, in enacting said statute and thereby changing the common-law rule, must have intended that it should accomplish some useful purpose, promote the ends of justice and be of some practical assistance in the discovery of the truth. If it is necessary to make a blood test to determine from what the plaintiff is suffering, a physical examination which prevents the making of such blood test will be of no use whatever in establishing the truth of the fact at issue. Such a construction of the section in question, instead of promoting the administration of justice and the discovery of the truth, will have exactly the opposite effect.

The argument by the respondent is based very largely upon the doctrine announced so forcibly by Mr. Justice GRAY in the case of *Union Pacific Railway Co.* v. *Botsford* (141 U. S. 250) where he said: " The inviolability of the person is as much invaded by a compulsory stripping and exposure as by a blow. To compel anyone, and especially a woman, to lay bare the body, or to submit it to the touch of a stranger, without lawful authority, is an indignity, an assault and a trespass." The common-law rule in this State has, however, been abolished by the enactment in question for the very purpose of making that lawful which was theretofore unlawful, to permit a physical examination of a plaintiff where none was permitted before. There is no doubt about the reason for such enactment. Its purpose was to afford protection to defendants, to enable them to discover the truth in regard to injuries claimed to have been received by plaintiffs, and thereby to promote justice. To give the section a narrow and

strict interpretation, which unduly restricts its purpose, would be contrary to the uniform practice under the section and contrary to the spirit of the statute.

We all know from experience in the trial of cases that it is the common practice for physicians in making examinations under an order to examine the plaintiff before trial, to insert instruments into the plaintiff's body and to put pressure upon the body with hands, and to make various tests, all of which are as offensive to a person, and as much an infringement upon his rights as it would be to draw a few drops of blood. No one has ever raised the question that such examinations were not proper or justified.

It is urged, however, that there have been cases where infection has been caused by a needle puncture such as is required to draw blood sufficient for a blood test. That is undoubtedly true, and in those cases the reason for the infection has been said to be the fact that the needle used was not properly sterilized or that the skin had not been properly cleansed. Section 873 provides: " such examination shall be had and made under such restrictions and directions as to the court or judge shall seem proper."

The court or judge granting the order is given full power to direct how the examination shall be made and, upon the request of the plaintiff, may throw around the examination all known safeguards. The sample of blood should be taken by a physician selected by the plaintiff if he so desires. It does not seem to me that under such circumstances it can be seriously urged that there is such danger that a court or judge is without jurisdiction to grant an order under section 873 for a blood test.

All concur.

Order reversed, with ten dollars costs and disbursements, and motion granted.