## Commonwealth v. Morris

*Felix Bolowicz,* for Commonwealth; *John H. Bonin,* for defendant.

VALENTINE, J., May 16, 1934.—Defendant, indicted for the crime of fornication and bastardy, presented his petition averring that he had requested the prosecutrix, Edna Telatovich, to surrender a certain amount of her blood as well as the blood of her child for the purpose of establishing the paternity of the child by means of a blood test and that the prosecutrix refused to submit to said request. The prayer of the petition is that the court "compel the prosecutrix to submit to said examination."

Upon the presentation of the petition, a rule was granted to show cause why the prosecutrix and her child should not submit to the blood test requested. The application is opposed by the Commonwealth, and the matter has been duly argued before the court in banc. The application might well be refused for the reason that defendant's petition is not verified as required by the Act of April 9, 1915, P. L. 72, which prohibits the court from receiving or considering a petition alleging any matter of fact, unless the same is duly verified as to such allegation.

Upon the question of the inherent authority of the court to require a litigant to submit to a physical examination, the authorities are in hopeless conflict: 14 R. C. L. 699, sec. 15.

In the leading case of Union Pacific Ry. Co. v. Botsford, 141 U. S. 250, it was declared that no right is more sacred or more carefully guarded by the common law than the right of every individual to the possession and control of his own person, free from all restraint or interference of others unless by clear and unquestioned authority of law, that the inviolability of the person is as much invaded by compulsory stripping and exposure as by a blow, and that no order commanding such exposure was ever known to the common law in the administration of justice between individuals except in a very small number of cases, based upon special reasons, and upon ancient practice coming down from the ruder ages, now mostly obsolete in England and never introduced into this country.

In this State, no statute authorizes such examination, and it has been definitely determined that the court cannot compel a plaintiff in an action for personal injuries to submit to a physical examination against his will by physicians acting on behalf of the defendant who is sought to be held responsible for such injuries: Cohen v. P. R. T. Co., 250 Pa. 15. The court may, however, refuse to allow the case to proceed until the plaintiff has submitted to such examination: Cohen v. P. R. T Co., supra. See also Twinn v. Noble, 270 Pa. 500, 502, and Schroth et ux. v. P. R. T Co., 280 Pa. 36.

In Heilig v. Harrisburg Railways Co., 17 D. & C. 509, upon plaintiff's refusal to submit to an examination his suit was dismissed.

In Stasko et ux. v. Smith, 16 D. & C. 726, the court ordered the plaintiff to submit to a physical examination and X-ray photographs.

Obviously, compliance with such an order could not be compelled, although the court might direct that the case could not be proceeded with until plaintiff submitted to such examination.

In New York, the physical examination before trial of the plaintiff in a personal injury action has been provided for by statute, and under such provisions it has been determined that the court has the power to order a sample of plaintiff's blood to be taken by a physician for the purpose of examination: Hayt v. Brewster, Gordon & Co., Inc., 199 App. Div. 68, 191 N. Y. Supp. 176.

The question of blood tests as evidence was recently considered by the Supreme Court of South Dakota in State v. Damm, 252 N. W. 7 (S. Dak.), in which the lower court refused to order a blood test requested by defendant. The opinion of the Supreme Court, page 10, points out that the contention was not that paternity could in any case be affirmatively proved by such blood test but that in quite a percentage of cases the impossibility of claimed paternity could be demonstrated by blood test. The appellate court concluded, at page 12, that the trial judge had not abused his discretion in refusing to order the blood test requested. This holding was based upon the proposition that it did not sufficiently appear that modern medical science is agreed upon the transmissibility

of blood characteristics to such an extent that it can be accepted as an unquestioned scientific fact that, if the blood groupings of the parents are known, the blood group of the offspring can be necessarily determined, or that, if the blood groupings of the mother and child are known, it can be accepted as a positively established fact that the blood group of the father could not have been a certain specific characteristic group; in other words, that it insufficiently appeared that the validity of the proposed test meets with such general accepted recognition as a scientific fact among medical men to say that it constituted an abuse of discretion for a court to refuse to take cognizance thereof.

In Commonwealth v. Zammarelli, 17 D. & C. 229, the testimony of the expert was to the effect that it is estimated that 47 percent of our population have type O blood, 43 percent, type A, 7 percent, type B, and 3 percent, type AB. In that case, a new trial was granted defendant after conviction for bastardy, where the uncontradicted evidence of a medical expert called by the defendant was that he had made blood tests of the mother, of the child, and of the defendant; that the child's blood was of a type different from that either of the defendant or of the mother. The testimony of the expert was to the effect that the mother had type "A" blood, the defendant type "O" blood, and the child type "B" blood. It was therefore the conclusion of the expert that the defendant could not be the father of the child.

"Proof of nonpaternity by this means depends on showing that, according to the laws of inheritance of determining factors, the child could not be the descendant of both the woman and the man in question. And hence, since it is assumed to be the child of the woman, it is consequently proved to be the child of a man other than the accused. The chances for a man wrongfully implicated of proving his innocence are about one in seven, or there are six chances to one that he will be unable to do so. If, however, the blood group of the man is known, it is possible to tell with greater accuracy what his chances may be of proving nonpaternity, since the various percentages in each blood group are approximately known." Com. v. Zamarelli, supra.

In the recent case of Bueschel v. Manowitz, 151 Misc. 899 [rev. 241 App. Div. 888], the Supreme Court of New York discussed the reliability of the Landsteiner blood grouping test as evidence, but this decision does not assist us in our present inquiry.

In the instant case, the request is that the court "compel the prosecutrix" to surrender a certain amount of her blood as well as the blood of her bastard child for the purpose of establishing the paternity of the child by means of a blood test. As there is in this State no statute regulating physical examinations of litigants, we are at a loss to understand how any such order could be enforced. The present case is not a civil suit. The plaintiff is the Commonwealth. To refuse to allow the case to be tried unless and until the mother consented to the blood test requested would probably result in transferring liability for the child's support to the poor district or some charitable agency. Obviously, such result would be highly improper and unjust. If the court is to exercise the extraordinary power to make an order such as the one sought in the present case and compel obedience thereto, authority for such an act must come from the legislature.

The rule is discharged.