ARTHUR CARDINAL, Plaintiff, *v.* UNIVERSITY OF ROCHESTER et al., Defendants.

Supreme Court, Special Term, Monroe County, April 9, 1946.

*Carroll M. Roberts* for University of Rochester, defendant.

*William L. Clay* for plaintiff.

VAN DUSER, J. There appears to be no objection raised to the oral examination of the plaintiff as requested in paragraph (a) of the notice of motion. The situation is different, however, as to some parts of the request for a physical examination.

Among the matters as to which the plaintiff is asked to submit to a physical examination are X-ray photographs, a sample of urine for analysis, a blood examination, removal of a sufficient quantity of the food contents of plaintiff's stomach to permit a gastric analysis, and the performance of a " bone marrow biopsy consisting of making a small skin incision over the sternum and the removal of a small amount of bone marrow for diagnostic purposes ".

Plaintiff objects, according to his counsel's statements on the argument, specifically, to the bone marrow examination, to the stomach contents examination, to so much of the blood examination as asks for taking of blood by means of a *vena* puncture, and to X-ray examinations.

There is authority for the allowance of the examination by means of X rays (*Carrig* v. *Oakes*, 259 App. Div. 138), and for a blood examination (*Hayt* v. *Brewster, Gordon & Co., Inc.*, 199 App. Div. 68). A blood examination has also been allowed by means of a *vena* puncture (*Grill* v. *Mathieson Alkali Works*, 243 App. Div. 853). As a matter of fact, this latter type of procedure has been used to such an extent during the " late " war, and so many of our citizens have voluntarily submitted to that process as a part of the war effort, that one can almost say the process is a universal one, not fraught with any appreciable degree of danger.

As to the removal of " a sufficient quantity of the food contents of the plaintiff's stomach to permit a gastric analysis to be made of such contents ", and the performance of " a bone marrow biopsy consisting of making a small skin incision over the sternum and the removal of a small amount of bone marrow for diagnostic purposes " the way does not appear so clear.

In support of the motion, the defendant submits an affidavit of a skilled and specially trained physician, who states, (1) that the removal of some of the food contents from the stomach is " an ordinary and commonly used diagnostic procedure and involves no element of danger to the plaintiff ", and (2) the bone marrow biopsy involves making a small skin incision over the sternum and the removal of a small amount of bone marrow. This physician says further that this " bone marrow " procedure is "standard ", and is " commonly done in the diagnosis of certain diseases and injuries and will cause no unusual pain or suffering to the plaintiff and will result in no permanent injury or damage of any kind to him ".

In opposition the plaintiff submits the opinion or affidavit of no physician, or of any medical authority, but contents himself

.with the assertion that these tests will, " as deponent is advised, other than the x-ray test, cause this plaintiff to submit to pain and suffering ". By whom he has been so advised, whether doctor, merchant, lawyer or chief, does not appear. This " advice " may have come from someone who is in a position to know, or from someone having no knowledge thereof whatsoever. We are not told.

The courts have been very slow and reluctant to enlarge the scope of a physical examination in particulars not specifically and clearly authorized by statute. A " cystopic " examination was held to be a request " to go much further than our courts have ever gone in subjecting a party to physical pain and danger to health." That examination was refused. (*Carrig* v. *Oakes*, 259 App. Div. 138, 139, *supra*. See, also, *Bartolotta* v. *Delco Appliance Corp.*, 254 App. Div. 809.)

As stated, however, the only medical opinions before the court on this motion come from the defendant. The removal of some of the food contents from the stomach is said to be an ordinary and commonly used diagnostic procedure, involving " no element of danger " to the plaintiff. The same was said of the use of barium meal in the denied examination of the plaintiff in *Bartolotta* v. *Delco Appliance Corp.* (*supra*), but there the plaintiff in furtherance of the examination would have been required to spend some twenty-eight hours in a hospital, or in the alternative, to submit to the same regimen out of the hospital which would otherwise have been imposed by the hospital, and to report for examination periodically during the same period of time and to submit to certain prescribed dietary regulations. On the other hand, " We all know from experience in the trial of cases that it is the common practice for physicians in making examinations under an order to examine the plaintiff before trial, to insert instruments into the plaintiff's body, * * * and to make various tests, all of which are as offensive to a person, and as much an infringement upon his rights as it would be to draw a few drops of blood." (*Hayt* v. *Brewster, Gordon & Co., Inc.*, 199 App. Div. 68, 72, *supra*). The method of securing a sample of the stomach contents is not stated. In view of the medical statements before us here, however, medically unchallenged, such is an ordinary and commonly used diagnostic procedure, involving no element of danger to the plaintiff, though, of course, it may be " offensive " to him. It does not, from the papers submitted, appear to be a procedure of a character or type such as should be denied to a defendant engaged in defending this type of a case.

As to the " bone marrow " test, however, the opposite conclusion seems to be warranted. The physician says in this operational procedure, a bone marrow " biopsy ", and " biopsy " is defined as " the examination of tissues, normal or morbid, excised from the living body ", an incision is required. This, it is further stated, will result in " no unusual pain or suffering ", and will result in no " permanent " injury or damage. The conclusion to be drawn, therefore, is that there will be *some* pain and suffering, though not unusual, and *some* injury or damage, though not permanent, following the incision and tissue removal. Such a procedure, or type of examination, we do not believe has as yet been authorized or countenanced, and the courts do not appear, as yet, to be willing to interpret the rule so as to permit such an invasion of a plaintiff's body. (*Carrig* v. *Oakes,* 259 App. Div. 138, *supra.*) No New York case has been found or cited to us directly in point. But the rule elsewhere seems to frown upon such a physical examination as borders on or constitutes an " operation ", as that word is commonly understood and used by laymen. (135 A. L. R. 887, 890, and cases there cited.)

The motion for the examination as requested is granted, except as to the bone marrow test, which is denied.

An order may be submitted in accordance with the foregoing, providing for the oral examination to proceed before Raymond E. Westbury, as Referee, at a time and place to be therein specified, and for the physical examination as authorized, to be made by Dr. William S. Mc Cann and Dr. John Lawrence, at a time and place likewise to be specified in the order.