John A. ISHLER, Jr., a minor by his next friend, his mother, Ina Rae Johnson, Plaintiff-Appellant,

v.

Clarence COOK, Defendant-Appellee.

No. 13461.

United States Court of Appeals
Seventh Circuit.

March 2, 1962.

Robert H. Van Brunt, Indianapolis, Ind., for plaintiff-appellant.

Howard J. Detrude, Jr., Erle A. Kightlinger, Owen S. Kern, Indianapolis, Ind. (Armstrong, Gause, Hudson & Kightlinger, Indianapolis, Ind., of counsel) for defendant-appellee.

Before HASTINGS, Chief Judge, and KNOCH and KILEY, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff, John A. Ishler, Jr., a minor by his next friend, his mother, Ina Rae Johnson, brought suit in the Circuit Court of Marion County, State of Indiana, to recover $50,000 damages for personal injuries suffered in an automobile accident allegedly caused by the negligence of the defendant, Clarence Cook. With no objection from plaintiff, defendant removed the cause to the United States District Court on the basis of diversity of citizenship. Trial by jury resulted in a verdict for defendant. Plaintiff's motion for a new trial was denied. This appeal followed.

The evidence discloses that on July 23, 1959, plaintiff, aged four years at that time, was riding in the back seat of an automobile driven by Mrs. Patricia Ann Richardson, going south on County Line Road, Marion County, Indiana, toward the intersection with United States Highway No. 36. Defendant was driving east on Highway No. 36. The speed limit on Highway No. 36 was 65 miles per hour. County Line Road is a stop street and had a stop sign at the intersection.

Mrs. Richardson testified that the day was misty and foggy, that "it had been raining quite hard. And it was still raining a little bit." She stated that she came to a complete stop behind the sign. On cross-examination, she testified that her view was unobstructed on both sides, that she saw nothing to the right, but thought she saw a car on the left; then she pulled up a little further, even with the north edge of Highway No. 36, for a better view, stopped again, looked to the left, saw the same automobile again, glanced once more to the right, saw nothing coming, and pulled out into the eastbound lane of Highway No. 36. Her automobile was in low gear at the time. Mrs. Richardson testified further that Mrs. Johnson, plaintiff's mother, was sitting beside her. Mrs. Johnson said "Oh, Pat." Mrs. Richardson then looked and saw an automobile bearing down on her from the right. She said that it seemed to her that this automobile, which proved to be defendant's automobile, "came out of nowhere. And was traveling—seemed to me very fast." She estimated the speed at 60 or 70 miles per hour. Mrs. Johnson estimated Mr. Cook's speed at 65 miles per hour, or more. Mrs. Richardson testified that she then stepped on the gas and tried, in vain, to pull out of the way. Her automobile and Mr. Cook's collided.

Mr. Cook testified that he was traveling at the rate of 50 miles per hour; that he first saw Mrs. Richardson's automobile when he was about 150 feet from the site of the accident; that her automobile was about 20 feet back from Highway No. 36

and was moving about five miles per hour. At about the same time, he saw another automobile coming along Highway No. 36, toward him. Then Mrs. Richardson's automobile pulled in front of him. Mr. Cook stated that he applied his brakes but could not avert the collision.

Ray Paul Mitchell testified for the plaintiff. He was a passenger in that other automobile on Highway No. 36, which was mentioned by both Mrs. Richardson and Mr. Cook. Mr. Mitchell's testimony was in several respects inconsistent with that of Herbert J. Winders, the driver of that car, who was a witness for defendant. Mr. Mitchell said that Mr. Cook's speed was between 65 and 70 miles per hour. Mr. Winders testified that it was only 50 miles per hour. He also acknowledged having made a prior statement that Mr. Cook's speed was between 45 and 55 miles per hour.

There was a third man in Mr. Winders' automobile: Robert Thielman. Both parties attempted without success to locate Mr. Thielman.

Mr. Mitchell testified that immediately prior to the accident, he had:

"* * * made the remark to Mr. Winders that there was a car coming toward us on 36, going east on 36. And I made the remark to him, that the car that was on County Line Road pulled up and stopped and proceeded to cross the 36. And I made —told Buddy [Mr. Winders] that— that that fellow was going to hit that car there. He was coming too fast."

Mr. Winders testified that he did not hear Mr. Mitchell make such a statement. He testified that just prior to the accident he himself had said:

" 'She's pulling out in front of that car.' And then I went on to say, 'He's going to hit her.' "

There was evidence to the effect that Mr. Mitchell had been convicted of aiding and abetting forgery of a treasury check and operating a motor vehicle after his driver's license had been revoked. Indiana State Police Officer Donald Rex Palmer testified that he had been acquainted with Mr. Mitchell for about three years, and that Mr. Mitchell's reputation in the community for truth and veracity was bad.

Indiana State Police Officer Harold Francis Archer testified that when he arrived at the scene of the accident, he spoke to Mr. Mitchell, Mr. Winders and Mr. Thielman, all at the same time. He remembered and testified to a statement made by one of the three. He could not remember which of the three made the statement, but he did remember that it was made in the hearing and without objection from the other two eye witnesses. He testified that he was informed by one of the three men that the vehicle going east on Highway No. 36 [Mr. Cook's automobile] was traveling at about 50 miles per hour. This testimony was offered to impeach Mr. Mitchell's testimony as to the speed of the defendant's automobile.

Dr. Edward Schaffer testified for plaintiff that he found a ⅝ inch difference in the length of plaintiff's legs. On cross-examination, he agreed that there was a possibility of error in this measurement and that an earlier examination of plaintiff had disclosed no such discrepancy in length. Counsel for defendant then asked whether Dr. Schaffer would object to meeting with defendant's doctor, Dr. Gordon W. Batman, to measure the plaintiff's legs together, to which Dr. Schaffer answered that he had no objection. However, when counsel for defendant asked Dr. Schaffer to indicate a time for such consultation, counsel for plaintiff objected that this was outside the scope of the direct examination. The Court sustained the objection.

Dr. Batman later testified that he had found the plaintiff's legs to be equal in length. He testified further that as no discrepancy in growth was found between the time of the accident in July and Dr. Schaffer's examination in October, and Dr. Batman's own examination in November, it would be very unusual for such a discrepancy of ⅝ inch to develop

between November and the following March, when Dr. Schaffer had again examined the plaintiff. Dr. Batman expressed a wish to remeasure the plaintiff. In answer to the Court's question:

"Could it be done so that it would be without any embarrassment to him and without any fear, in the courtroom, in the presence of the jury, and Counsel, under circumstances that we wouldn't want the boy to be concerned or frightened or embarrassed in any way, could you do that?"

Dr. Batman answered, "Yes."

The Court allowed the examination over objection of plaintiff's counsel, but indicated that Dr. Schaffer would be permitted to make an equal or similar demonstration. Dr. Batman measured the plaintiff with a tape line and then testified that he did not believe that the plaintiff's legs were unequal in length.

The contested issues are limited to the rulings on admission of evidence in the three instances outlined above.

Plaintiff's theory is that the speed of defendant's automobile was a primary factor in the plaintiff's case, and that it was error to permit Officer Archer to testify to a statement made by one of a group, when he could not recall whether that statement had been made by Mr. Mitchell or Mr. Winders, who had testified and were subject to cross-examination, or by Mr. Thielman who was not available.

In effect, plaintiff contends, the Court allowed the missing witness to testify without oath through Officer Archer, thus denying plaintiff his right of confrontation or cross-examination to test bias and credibility.

Counsel also argues that plaintiff's cause was erroneously prejudiced by admitting Mr. Winders' testimony as to what he said to his companions at the time of the accident, and by requiring plaintiff to submit to physical examination in the presence of the jury, after Dr.

Batman had been afforded full opportunity to examine the plaintiff in private prior to the trial.

■ Mr. Mitchell had testified to remarks he made to Mr. Winders and Mr. Thielman immediately prior to the collision. He said he knew of no other remarks made by anyone in the automobile with him at that time. It was not error to allow Mr. Winders to testify that he did not hear the remarks to which Mr. Mitchell testified; that he himself had made totally different comments at that time, apparently without contradiction from Mr. Mitchell. Similarly Officer Archer testified to the making of a statement by one of the three eye witnesses within the hearing of the other two. Officer Archer's testimony went to prove that Mr. Mitchell (1) himself had made a statement inconsistent with the remarks which he testified he made, or (2) had allowed that statement to stand uncontradicted when somebody else made it.

■■ The defense adduced a great deal of evidence to cast aspersions on the credibility of Mr. Mitchell. The evidence to which plaintiff objects was not hearsay. It was direct evidence. It was introduced not to prove the truth of the facts stated, but merely to show that the statements were made. N. L. R. B. v. G. W. Thomas Drayage & Rig. Co., 9 Cir., 1953, 206 F.2d 857, 860; N. L. R. B. v. Dant, 9 Cir., 1953, 207 F.2d 165, 167. The issue then is whether the testimony was relevant. Evidence that a statement has been made in one's presence and hearing may be relevant because failure to deny that statement has probative value as an admission. United States v. Perlstein, 3 Cir., 1941, 120 F.2d 276; Klein v. Hoffheimer, 1889, 132 U.S. 367, 10 S. Ct. 130, 33 L.Ed. 373. In the case before us, the testimony constituted direct evidence that the statements were made and that they were uncontradicted by Mr. Mitchell. His silence at the time of the accident, and immediately afterward, was introduced to attack the credibility of his testimony at the trial. The Trial Judge

carefully instructed the jury as to the limited purpose for which this evidence was received.

■■ With respect to the alleged discrepancy in the length of plaintiff's legs, the two doctors were not stating contradictory diagnoses as experts. They were testifying only to the result of mere measurement. Plaintiff's counsel objected to having the two doctors examine the plaintiff together in private. Dr. Batman later testified to finding no discrepancy and was allowed to verify his findings in Court. Plaintiff's counsel argues that a plaintiff need not submit to further examination in the presence of the jury where the defendant's doctor had had full opportunity to examine the plaintiff in the privacy of his office prior to trial. It is further contended that where the plaintiff has objected to a duplicate examination and further examination in the presence of the jury, and such examination is calculated to prejudice the jury, then it is an abuse of discretion to force the plaintiff against his will to submit to such examination. However, we cannot agree that permitting Dr. Batman to verify his measurements was calculated to prejudice the jury. The Court may order more than one physical examination of a plaintiff in an action based on personal injury to obtain the full truth concerning the matter in controversy. City of Valparaiso v. Kinney, 1921, 75 Ind.App. 660, 664–665, 131 N.E. 237, 238. Here plaintiff's doctor had testified to a change in the plaintiff's physical condition which had occurred since the examination made by the defendant's doctor. We find no abuse of the Trial Court's discretion in permitting a demonstration by Dr. Batman with respect to the measurement of plaintiff's legs. Pennsylvania Ice & Coal Co. v. Elischer, 1939, 106 Ind.App. 613, 617, 21 N.E.2d 436, 438.

The judgment of the District Court is affirmed.