OPINION OF THE COURT
Arthur D. Spatt, J.
Motion by plaintiffs for an order permitting the plaintiffs to reargue the oral decision of this court dictated into the record on July 19, 1982, following an oral motion made by defendant Harris, and upon such reargument, granting plaintiffs the following relief: (1) denying defendants’ motion requiring the plaintiffs to pay for the cost of certain blood tests and the results thereof conducted by the New York State Institute for Basic Research in Developmental Disabilities (Institute); (2) unsealing the records of such Institute so as to permit free access thereto by all parties to this litigation; (3) permitting all parties to offer into evidence upon the trial of this action the results of such tests and the records of said Institute; and (4) requiring the attorney for defendant Harris to furnish to plaintiffs copies of all reports received by them .from the said Institute, is determined as set forth below.
*1042 BACKGROUND AND CONTENTIONS
This is a medical malpractice action in which, it is alleged, the infant plaintiff sustained irreversible brain damage at or about the time of her birth on August 4,1969.
By order dated January 21, 1982 (Kelly, J.), the infant plaintiff and her father Antonio Ravo were directed to submit to blood tests at plaintiffs’ residence.* Plaintiffs were given the right to have their own doctor present during the entire examination to be conducted by defendants’ designated physician.
Plaintiffs’ counsel states that he consented to the aforementioned blood tests to be conducted of both the infant plaintiff’s parents and to be performed at the Institute’s facility. He further states that in arranging for these blood tests, “it was agreed between the office of Martin, Clear-water & Bell and us, that a copy of the report of such tests would be immediately forwarded to us, upon receipt by such firm.” The blood tests were conducted on May 17, 1982.
Plaintiffs’ counsel served a “so ordered” subpoena on the Institute for the production of all its records at Trial Term, Part I. Instead of being delivered to the appropriate clerk of this court as required by the subpoena, inadvertently, the records of the Institute were mailed to the office of plaintiffs’ counsel.
On July 19, 1982, the defendant Harris made an oral ■ motion for certain relief with regard to the subpoenaed Institute’s records, which resulted in an oral decision by this court, as follows:
(1) The application by defendant Harris to require the plaintiffs to bear the cost of the blood tests was denied.
(2) The application by defendant Harris to preclude plaintiffs from using any information in the Institute’s records was referred to the trial court.
(3) Plaintiffs’ counsel were instructed not to use any of the Institute data obtained from the file inadvertently sent to plaintiffs’ counsel’s office in the preparation of plaintiffs’ expert witnesses, unless a copy of the report was served on *1043 plaintiffs’ counsel, or if an Institute witness is called at the trial, in which latter case the entire Institute file would be subject to perusal by plaintiffs’ counsel.
(4) The request of defendant Harris to exclude the opinions of plaintiffs’ experts on trial was denied.
(5) The Institute file, inadvertently mailed to plaintiffs’ counsel, was to be turned over to the medical record clerk to be sealed.
(6) Plaintiffs’ application to direct defendant Harris to furnish them with a copy of the Institute report was denied without prejudice to renewal on trial or by motion.
Underlining this motion, plaintiffs contend that the Institute is a New York State facility created under the authority of section 13.17 of the Mental Hygiene Law, and thus, the Institute’s “official” records are available to all parties to this lawsuit. Further, plaintiffs contend that the Institute is the only “official state agency” which conducts the particular blood tests involved herein.
Also, plaintiffs contend that they are entitled to a copy of the Institute’s report to defendant Harris whether or not the Institute’s representative is called as a witness. In sum, plaintiffs argue that they are entitled as a matter of right to the Institute’s report to defendant Harris.
Finally, plaintiffs contend that “the defendants themselves agreed to furnish copies of such reports”. In particular, plaintiffs’ attorney Robert W. Wanderman asserts that he was assured by defendant’s attorney Lawrence T. Muri “on numerous occasions” that he would serve a copy of the report on plaintiffs’ counsel.
In opposition, defendant Harris contends that it retained Dr. Ted Brown of the Institute as a private expert witness to perform the blood tests directed by Justice Kelly’s order; and, as such, his records are confidential. Further, defendant Harris states that plaintiffs can have similar blood tests conducted at the Institute. Also, defendant Harris denies that these blood tests can be performed only at the Institute. In addition, defendant Harris contends that the Brown report is that of its expert witness rather than a report of physical examination and, as such, is not discoverable.
*1044 In addition, attorney John L. A. Lyddane of the law firm representing defendant Harris states, by way of surreply affirmation, that “at no time were the attorneys for the plaintiffs ever promised that copies of the expert opinions of the defense experts would be sent to them.” However, plaintiffs’ contention that attorney Muri would furnish him with a copy of the report is not expressly denied by attorney Muri. Finally, defendant asserts that the attorneys for plaintiffs did not exchange medical reports as is required by CPLR 3121 (subd [b]).
CONCLUSIONS
This court has already denied the application by defendant Harris to require plaintiffs to bear the cost of the blood tests. Therefore, plaintiffs’ repetitive request for such relief is denied as moot. Further, the court adheres to its previous oral decision temporarily sealing the Institute records so as to deny plaintiffs’ request to “free access” to such records. Also, plaintiffs’ present request to permit all parties to offer the results of these blood tests and the Institute records in evidence at the trial is referred to the Trial Justice.
This leaves for determination the sole issue of whether plaintiffs are entitled to a copy of the Institute’s blood test report, whether or not defendant Harris calls Brown as a witness.
In this court’s view, the retention of Dr. Ted Brown of the Institute as a private examining physician does not confer upon Dr. Brown’s report an “official state agency” status which would permit, solely on such ground, disclosure of the report to all parties. Further, Dr. Brown’s report with regard to the specialized blood test performed by him is similar to the type of physician’s report contemplated by CPLR 3121 (subd [a]) and rules 672.1 and 672.3 of the Rules of the Appellate Division, Second Department (22 NYCRR 672.1, 672.3). In fact, CPLR 3121 (subd [a]) expressly permits the defendant to obtain a “blood examination by a designated physician.” (See, also, Hayt v Brewster, Gordon & Co., 199 App Div 68.)
CPLR 3121 (subd [b]) provides as follows: “(b) Copy of report. A copy of a detailed written report of the examining *1045 physician setting out his findings and conclusions shall be delivered by the party seeking the examination to any party requesting to exchange therefor a copy of each report in his control of an examination made with respect to the mental or physical condition in controversy.” (Emphasis supplied.)
The purport of the statute is clear. If a defendant conducts a physical examination or a blood test of a plaintiff, the defendant shall deliver to plaintiff a copy of the report of the examining physician provided that plaintiff exchanges a copy of each medical report in plaintiff’s control. The statute was clarified in Hoenig v Westphal (52 NY2d 605, 609-610) wherein Chief Judge Cooke interpreted this rule, which expands discovery, as follows: “CPLR 3121 is an important disclosure device available in cases in which physical or mental condition is in controversy. Subdivision (a) requires a party to submit to a physical examination upon request of another party and to give authorization for release of hospital records. Subdivision (b) provides that a copy of the report of the examining physician must be given to ‘any party requesting to exchange therefor a copy of each report in his control of an examination made with respect to the mental or physical condition in controversy’ (CPLR 3121, subd [b]). Contrary to plaintiffs’ argument, this rule broadens rather than restricts discovery. Read in context, the exchange provision relates to reports of examinations conducted pursuant to subdivision (a) or otherwise specifically for the litigation. Since such reports, for whomever prepared, could be classified as material prepared for litigation and thus' exempt from disclosure under CPLR 3101 (subd [d]), 3121 (subd [b]) gives the plaintiff or another party a right to discovery not otherwise available. Subdivision (b) quite simply makes discoverable from a person requesting an examination material otherwise not discoverable. It cannot be read to restrict the right to discover material generally subject to disclosure.” (Emphasis supplied.)
See, also, Miller v Capital Dist. Tr. System (110 Misc 2d 626), and Falcone v Repetti (61 Misc 2d 407), in which defendants were directed to furnish to plaintiffs a copy of their examining physician’s report.
*1046 Stated simply, the discoverability of the examining physician’s report “hinge[s] on an offer by the patient to swap his own doctor’s reports in exchange.” (See McLaughlin, New York Trial Practice, NYLJ, July 10, 1981, p 1, col 1.) So that, if a plaintiff is willing to pay the price, i.e., exchange whatever similar reports that he may have, plaintiff can obtain a copy of defendant’s physician’s examining report.
In this case, therefore, if plaintiffs’ attorneys exchanged copies of plaintiffs’ medical reports in their control, they are entitled to the Brown report. However, in this regard, a factual issue has been raised in that attorney Lyddane stated, in his September 10, 1982 surreply affirmation, as follows: “Further, the attorneys for plaintiff chose not to exchange any reports of physical findings or examination pursuant to the CPLR and the Court rules. To now maintain that they are entitled to the examination reports of the defense without having offered their own reports for exchange at the appropriate juncture in the course of discovery (or at any other time) is absurd. The law has never contemplated or sanctioned such a one-sided approach to discovery.”
To resolve this factual matter, counsel for all parties are directed to be present at my chambers on November 15, 1982, promptly at 9:00 a.m. with their entire files and relevant witnesses, if any, to determine whether plaintiffs’ counsel did, in fact, exchange copies of all medical reports in their control. (In this connection see Scott v Berry, 81 Misc 2d 656.) If such exchange was made, the attorneys for. defendant Harris shall be directed to serve a copy of the Brown or Institute report on plaintiffs’ counsel.
The court has not yet determined whether attorney Muri agreed to serve a copy of the subject report, or the significance of such agreement, if made. Such a ruling may not be necessary and will await the outcome of the procedure above set forth.

 The blood tests were designed to help establish the issue of causation; i.e., whether or not the “fragile X” chromosome was the cause of the mental retardation.