**In re CERTAIN ASBESTOS CASES Pending on the Docket of the Honorable Sidney A. Fitzwater.**

**Civ. A. Nos. CA3–83–1454–D.***

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 10, 1986.

---

* CA3–84–0516–D, CA3–84–1136–D, CA3–84–1434–      D, CA3–84–1446–D, CA3–84–1685–D, CA3–84–

2063–D, CA3–85–0452–D, CA3–85–0511–D, CA3–85–0551–D, CA3–85–0619–D, CA3–85–0767–D, CA3–85–1144–D, CA3–85–1278–D, CA3–85–1291–D, CA3–85–1377–D, CA3–85–1462–D, CA3–85–1536–D, CA3–85–1576–D, CA3–85–1807–D, CA3–85–2052–D, CA3–86–0019–D, CA3–86–0231–D, CA3–86–0308–D, CA3–86–0446–D, CA3–86–1445–D, CA3–86–1503–D, CA3–86–1547–D, CA3–86–1601–D, CA3–86–1720–D, CA3–86–1747–D, CA3–86–1971–D, CA3–84–0433–D, CA3–84–0906–D, CA3–84–1334–D, CA3–84–1445–D, CA3–84–1640–D, CA3–84–1917–D, CA3–85–0223–D, CA3–85–0460–D, CA3–85–0514–D, CA3–85–0618–D, CA3–85–0762–D, CA3–85–1104–D, CA3–85–1218–D, CA3–85–1279–D, CA3–85–1294–D, CA3–85–1456–D, CA3–85–1528–D, CA3–85–1575–D, CA3–85–1646–D, CA3–85–1979–D, CA3–85–2604–D, CA3–86–0098–D, CA3–86–0293–D, CA3–86–0434–D, CA3–86–0595–D, CA3–86–1494–D, CA3–86–1505–D, CA3–86–1556–D, CA3–86–1636–D, CA3–86–1735–D and CA3–86–1920–D.

Gary D. Elliston, J. Carlisle DeHay, Jr., of DeHay & Blanchard, Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

FITZWATER, District Judge.

Certain of the defendants[1] in one or more of the asbestos cases pending on this court's docket request an order of the court requiring that, in the event of the death of any plaintiff who alleges an asbestos-related injury, the representative of the estate of the deceased plaintiff produce the deceased's body "for an autopsy to be made by a competent pathologist for the purpose of determining the exact cause of death." Plaintiffs, including a group of plaintiffs who reside in the state of Virginia, oppose the motion. The motion presents unsettled questions concerning the scope and intent of Rule 35(a)[2] and the discretion to be exercised by a district court in ordering a "physical examination." With respect to the Virginia plaintiffs, the court must decide a challenge to its jurisdiction over the body of a deceased Virginia plaintiff.

For the reasons that follow the court grants the motion, in part, to the extent that the court will determine, on a case-by-case basis, whether an autopsy should be ordered. The court will later decide the procedure by which individual motions shall be presented. This shall be done by separate order after considering written submissions of the parties.

## I. DEFENDANTS' CONTENTIONS

Supported by excerpts from the depositions of plaintiffs' medical expert witnesses, excerpts from physicians' papers and writings on malignancies, and excerpts from medical textbooks, defendants move the court to enter an order requiring, *inter*

Russell Budd of Baron & Budd, Dallas, Tex., Donald N. Patten, Jonathan A. Smith-George, Robert R. Hatten, of Patten, Wornom & Watkins, Newport News, Va., for plaintiffs.

---

1. Eagle-Picher Industries, Inc.; Owens-Illinois, Inc.; Pittsburgh Corning Corporation; Owens-Corning Fiberglas Corporation; H.K. Porter Company, Inc.; Keene Corporation; Armstrong World Industries, Inc.; Fibreboard Corporation; The Celotex Corporation; National Gypsum Company; United States Gypsum Company; ACandS, Inc.; and The Flintkote Company.

2. All rule references are to the Federal Rules of Civil Procedure unless otherwise indicated.

*alia* [3]: that any plaintiff claiming an asbestos-related injury be required to execute a release permitting the performance of a complete autopsy at the time of such plaintiff's death; that someone notify plaintiff's and defendants' counsel immediately upon the event of death; that the body be produced for a full and complete autopsy to be made by a competent pathologist designated by defendants, or as the court shall order, for the purpose of determining the exact cause of death; and, alternatively, that defendants be permitted to have an independent pathologist of their choosing present during any autopsy performed at the request of plaintiff's representative or counsel. Defendants also request that the court regulate the taking and preserving of tissue samples and specimens.

The underlying rationale for defendants' motion is that a full and complete autopsy will provide valuable medical information relevant to plaintiffs' claims. According to defendants, the primary diseases plaintiffs allege they suffer from asbestos are mesothelioma, lung cancer, and asbestosis. "An important diagnostic tool for each of these diseases is the examination and histological examination of pathological tissue at autopsy." (Defs.Br. at 13). "Likewise, the causation of a properly diagnosed condition can be determined or at least supported by pathological materials." *Id.*

According to defendants, Dr. McCaughey, an expert frequently relied upon by plaintiffs, and Drs. Kannerstein and Churg have opined that "in many cases only a meticulously performed autopsy can establish the diagnosis of mesothelioma with certainty." *Id.*

Dr. Eric Comstock, another of plaintiffs' witnesses, stated that he relies "upon the pathology reports ... but primarily the postmortem" in making the diagnosis of mesothelioma. *Id.* at 14. Dr. John Craighead, Chairman of the Pneumoconiosis Committee of the College of American Pathologists, wrote in a report published in the *Archives of Pathology and Laboratory Medicine* on October 8, 1982 that the critical step in the diagnosis of mesothelioma is distinguishing it from other carcinomas and sarcoma because "the ultrastructural features of mesothelioma are similar to those of many carcinomas and sarcomas." *Id.* Dr. Craighead also wrote that,

---

**3.** The full scope of the requested order is set forth by defendants as follows:

Defendants move this Court to enter an order, that upon the death of a Plaintiff claiming an asbestos-related injury, that:

1. Any Plaintiff claiming an asbestos-related injury be required to execute a release permitting his attorney, spouse, or representative to have a full and complete autopsy on his death. Such release shall instruct his attorney, spouse, or representative to notify the defense counsel as soon as practicable of Plaintiff's death.

2. Prior to burial, autopsy or other final disposition of the decedent's remains, that the decedent's spouse or representative must notify the Plaintiff's attorney of the death;

3. Plaintiff's attorneys, upon learning of the death of any Plaintiff alleging an asbestos-related injury, shall immediately notify counsel for Defendants of the Plaintiff's death; and

4. Decedent's representatives produce the body of the deceased for a full and complete autopsy to be made by a competent pathologist designated by the Defendants, or as the Court shall order, for the purpose of determining the exact cause of death; and

5. Defendants shall have the right to have an independent pathologist of their choosing present during the course, scope and performance of any autopsy performed at request of Plaintiff's representatives or Plaintiff's counsel; and

6. Appropriate and adequate quantity of tissue from the lungs and from any tumor located during the course of any autopsy performed at request of Plaintiff's representatives or Plaintiff's counsel shall be obtained and preserved for inspection by pathologists chosen by Defendants; and

7. All tissue samples selected and preserved for the inspection by Defendants may be submitted for appropriate medical and pathological testing to determine the nature of any tumor located or discovered during the course of the autopsy and the lung tissue obtained during the course of said autopsy shall also be available for appropriate medical and pathological testing to determine the contents thereof within 10 days of the autopsy; and

8. All tissue samples and specimens obtained and preserved by or on behalf of all parties shall be preserved by such parties for inspection and review by all other parties and for, should the parties deem it appropriate, eventual presentation as evidence at the time of trial in the relevant action.

although autopsy findings are useful, "[s]taining for mucins often is helpful in differentiating an adenocarcinoma from a mesothelioma." *Id.*

Defendants also rely on four other experts who have reported similarities between mesothelioma and other carcinomas and stressed the importance of an autopsy for diagnosing mesothelioma. Dr. J.F. Legier, also frequently relied upon by plaintiffs, testified in his April 21, 1983 deposition that, although the "pathological diagnosis of mesothelioma can be difficult," a diagnosis of mesothelioma by means of an autopsy can be made with a "very high degree of confidence." *Id.* at 15. The problem in pathological diagnosis alone, he testified, is that adenocarcinomas can spread on the surface of the lung "mimicking mesotheliomas."

In his textbook, *Occupational Lung Disorders* (2d Edition, 1982), Dr. Parkes reported that many tumors present features identical to those presented by mesotheliomas and that it is often difficult to distinguish some types of mesothelioma from other carcinomas. He also wrote: "a definitive diagnosis of malignant mesothelioma cannot be made during life or at post mortem, other than by microscopy. Tissue biopsy must be sufficiently large to permit ... different features of the tumor to be identified [because] ... a large number of other primary or secondary tumors may be confused with mesothelioma." *Id.*

According to Dr. John Maddox, a board-certified pathologist frequently designated as an expert by plaintiffs' attorneys, metastatic carcinomas can arise from distant sites in the body. Therefore, he says, it is "preferable to do a complete autopsy when you are attempting to discover if there are foreign sites from which a tumor has metastasized." *Id.* at 16.

Dr. Eugene Mark, author of *Lung Biopsy Interpretation* (1st Edition, 1984), has also explored the difficulty of distinguishing metastatic carcinoma in the lung from primary bronchopulmonary carcinoma. He has opined that "histologies of the lung tumor and a known extra-pulmonary primary tumor should always be compared." *Id.*

According to defendants, although the examination and histological examination of pathological tissue at autopsy is an important diagnostic tool for mesothelioma, mesothelioma is not the only disease process where examination of autopsy material is helpful. In his report Dr. Craighead wrote that "[a] complete examination of the respiratory tract, including the larynx and thoracic cavity, is critical to the thorough evaluation of the suspected case of asbestosis." *Id.* at 17. Dr. Legier has opined that, while it would be possible to diagnose asbestosis on an autopsy lung without input from a radiologist, it would be only possible to suspect asbestosis or confirm what has been considered to be asbestosis on a biopsy lung. *Id.*

## II. PLAINTIFFS' CONTENTIONS

Plaintiffs, supported by the affidavit of Dr. Maddox, oppose the requested relief on various grounds. Plaintiffs argue that: Rules 26 and 35 do not authorize the relief requested; a decedent is no longer a "party" and his dead body is no longer a "person" within the ambit of Rule 35(a); the court should not exercise its discretion beyond the literal scope of the rules; the court should not issue a blanket order but should instead decide, on a case-by-case basis, whether the physical condition of the deceased is "in controversy" and whether there is "good cause" for an examination as required by Rule 35(a) (contending that in many cases the diagnosis can be made without an autopsy); defendants' reasons for requesting an autopsy go to the weight of the testimony; and defendants have not demonstrated that the desired information cannot be obtained by other means or other forms of discovery. Alternatively, plaintiffs argue that any autopsies ordered should be limited to the organs from the neck down because an autopsy of the head would lack any probative value. This latter argument is also supported by the affidavit of Dr. Maddox.

The Virginia plaintiffs additionally argue that this court lacks jurisdiction over a deceased plaintiff under Virginia state law[4] because, upon the plaintiff's death, his cause of action is extinguished and, although an action may be prosecuted by the deceased's personal representative, it is not a survival of the right of action which the injured person had prior to his death but is instead an independent right of action. These plaintiffs reason that because the deceased "will no longer be a party to this litigation [the] entry of an order requiring an autopsy would obviously be unenforceable against him." (Va.Pls.Br. at 2). They also argue that the identity of the deceased's personal representative may not be known until after any court-ordered deadline has passed for notifying counsel and initiating the autopsy process. Plaintiffs also advert that in 1984 Judge J. Calvitt Clarke, Jr. denied an autopsy order request in an asbestos action pending before him in the Eastern District of Virginia.[5]

## III. DISCUSSION

### A. Does Rule 35(a) Permit an Autopsy?

To decide the question presented the court must navigate uncharted waters without the assistance of a jurisprudential sextant: few cases analyze Rule 35(a) and there are no reported cases that address whether the court may require an autopsy pursuant to the Rule.[6] While Rule 35(a)[7] provides that the court may order a party, or person in the custody and control of a party, to submit to a "physical ... examination by a physician," the Rule does not define what is a "physical examination." Accordingly, the court must interpret the Rule by attempting to discern its underlying purpose and intent.

■ As a pretrial discovery rule, moreover, Rule 35(a) should be interpreted liberally in favor of granting discovery. *See* 4A J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 35.04 at 35–20, 21 (2d Ed.1985). The Supreme Court's construction of Rule 35 reflects a cognizance of "the basic premise 'that the deposition-discovery rules are to be accorded a broad and liberal treatment' to effectuate their purpose that 'civil trials in the federal courts no longer need be carried on in the dark.'" *Schlagenhauf v. Holder*, 379 U.S. 104, 114–115, 85 S.Ct. 234, 240–241, 13 L.Ed.2d 152 (1964) (citations omitted) (Rule 35 decision).[8]

The purpose and intent for the Rule, expressed by its terms, is to permit the examination of a person whose mental or physical condition is "in controversy." If a deceased's physical condition at death is "in controversy" (and all other requirements of

4. Virginia plaintiffs contend that, under Texas conflict law principles, Texas would follow the law of the state with the most significant relationship to the facts of the case, which plaintiffs contend is the state of Virginia. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984).

5. The parties have not provided the court with either a copy of the decision or the caption of the case.

6. *But see Mutual Life Insurance Co. v. Griesa*, 156 F. 398 (C.C.D.Kan.1907), *rev'd on other grounds*, 169 F. 509 (8th Cir.), *cert. denied*, 215 U.S. 600, 30 S.Ct. 400, 54 L.Ed. 344 (1909), in which the court ordered exhumation of a body for examination by a pathologist.

7. Rule 35(a): When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

8. The purpose of discovery is to ascertain the truth. *Ishler v. Cook*, 299 F.2d 507, 511 (7th Cir.1962); *DeSeversky v. Republic Aviation Corp.*, 2 F.R.D. 113, 114 (E.D.N.Y.1941). Consistent with this principle, the purpose for a discovery device such as Rule 35 is to seek "truth and justice." *Union Pacific Railway Co. v. Botsford*, 141 U.S. 250, 259, 11 S.Ct. 1000, 1004, 35 L.Ed. 734 (1891) (dissenting opinion) (case decided prior to promulgation of Rule 35; physical examination rejected as unauthorized by any then-existing rule).

Rule 35 have been satisfied), the Rule's purpose appears to support the physical examination of a decedent.

■ An autopsy is but one method for physically examining a person's remains. Admittedly, it is a highly invasive procedure and involves dissecting the body and removing body organs. That the procedure is invasive, however,. does not remove it from the ambit of a Rule 35(a) physical examination. Invasive procedures that are medically approved have been allowed upon living persons by authority of Rule 35. *E.g., Klein v. Yellow Cab Co.,* 7 F.R.D. 169 (N.D.Ohio 1944) (cystoscopy and pylegrams); and *Cardinal v. University of Rochester,* 71 N.Y.S.2d 614 (App.N.Y.1946) (Sup.Ct.Monroe Co.1946), *aff'd as mod.,* 271 A.D. 1048, 69 N.Y.S.2d 352 (4th Dept. 1947), followed at Special Term at 71 N.Y. S.2d 617 (Sup.Ct.Monroe Co.1947) (bone marrow biopsy).

Rule 35, moreover, has been described as a "powerful instrument for ascertaining the truth." 8 C. Wright & A. Miller, Federal Practice and Procedure § 2231 at 665–666 (1970). It would be incongruous to terminate at death the search for the true state of a person's physical condition when the precise controversy is his condition at death.

■ Plaintiffs contend, however, that an autopsy cannot be performed because the deceased is no longer a party. The court rejects this argument. Rule 35 was amended in 1970 to eliminate the restriction that a physical or mental examination could only be performed upon a party. *See* NOTES OF ADVISORY COMMITTEE ON RULES, 28 U.S.C.A. Rule 35(a), 1970 Amendment ("It is desirable to extend the rule to provide for an order against the party for examination of a person in his custody or under his legal control").

■ The court also rejects plaintiffs' contention that a decedent is not a "person" within the meaning of Rule 35(a). Nothing in the Rule expressly limits its reach to the living. As the court has held above, the purpose and intent for the Rule support the conclusion that a decedent is a "person" within the meaning of Rule 35(a) if his physical condition at time of death is "in controversy."

■ The dispositive question, instead, is whether a decedent is a "person in the custody and control of a party" within the meaning of Rule 35(a). In Texas, as well as Virginia, state law provides who has custody and control of the deceased's body, known as the right of sepulture. *See* TEX. REV.CIV.STAT.ANN. art. 912a–20 (Vernon 1964); *Love v. Aetna Casualty & Surety Co.,* 99 S.W.2d 646, 651 (Tex.Civ. App.1936), *aff'd,* 132 Tex. 280, 121 S.W.2d 986 (Tex.Comm'n App.1938, opinion adopted); VA. CODE ANN. § 54–325.8 (1986 Cum.Supp.); *Sanford v. Ware,* 191 Va. 43, 60 S.E.2d 10 (1950); *Goldman v. Mollen,* 168 Va. 345, 191 S.E. 627 (1937). In a number of the cases now pending on this court's docket, the claimant's spouse is also a party-plaintiff. Accordingly, the spouse is already a party who, under applicable state law, will have custody and control of the deceased's body at the time of death. With respect to those cases in which the spouse is not already a party, Rule 25(a) permits the substitution of parties on the death of the injured claimant. On a case-by-case basis the court can determine whether the party to be substituted will or does have custody and control of the deceased's body.

■ Plaintiffs also object to defendants' motion on the ground that the autopsy procedure evinces strong religious, spiritual, emotional, and personal feelings. That an autopsy precipitates pronounced emotions is not to be gainsaid; this is not, however, a basis for creating an exception to the intended reach of Rule 35(a). While it is evident that such sentiments are deeply interwoven in our societal fabric, it is equally evident that society has erected no insuperable bar to conducting autopsies. For example, the several states uniformly require an autopsy when the cause of

death may be the result of criminal conduct.[9]

Rather than, as plaintiffs request, rejecting uniformly the conducting of an autopsy, the court, in connection with determining compliance with the "good cause" requirement of Rule 35(a), can balance the autopsy as an instrument of truth and justice in a specific case with the legitimate feelings of those affected.[10]

■ The court also rejects the Virginia plaintiffs' contention that the court, under Virginia law, lacks jurisdiction over a deceased plaintiff. The court has already held that Rule 35(a) permits the court to require a party to produce a decedent who is under the party's custody and control. Therefore, unless the person who intends to assert an independent right of action for the death of the deceased is *not* the same person who has custody and control of the deceased's body at time of death (a determination which can be made on a case-by-case basis), this court can reasonably require, pursuant to Rule 35(a) and consistent with Rule 25(a), that the person asserting the independent right of action produce the deceased's body for autopsy examination. Professors Wright and Miller observe that it is not clear under Rule 35, as amended in 1970, how far is the reach of the Rule's provision that a person under the legal control of a party can be examined. Nevertheless, they conclude that "it would seem that when a husband has a substantive right to recover for injuries to his wife, the wife is under his legal control for this purpose and he can be ordered to produce her for a physical examination." 8 C.

Wright & A. Miller, § 2233 at 669. By analogy, it is reasonable to hold that one who has custody and control of a decedent, and who asserts an independent right to recover for the death of the decedent, can be required to produce the decedent's body.

■ Finally, the court rejects plaintiffs' contention that Rule 26 does not permit the relief defendants request. Rule 26 is broader in scope than Rule 35. *See In re Mitchell,* 563 F.2d 143 (5th Cir.1977) (Rules 35 and 26 not coextensive because Rule 35 requires that examination be conducted by physician). To the extent Rule 35(a) permits the conducting of an autopsy, Rule 26 also permits such discovery.

B. Have Defendants Met the "Good Cause" and "In Controversy" Requirements?

■ By its very terms, Rule 35(a) does not afford a carte blanche right of physical examination. In addition to the requirement that the physical condition of the person to be examined be "in controversy," the Rule requires that "good cause" be shown. The courts have not hesitated to reject Rule 35 motions that fail to satisfy either ineluctable element.[11] In *Schlagenhauf,* the Supreme Court plainly stated that these requirements "are not met by mere conclusory allegations of the pleadings ... but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." 379 U.S. at 118, 85 S.Ct. at 242. Rule 35 "requires discriminating ap-

---

**9.** *E.g.,* TEX.CODE CRIM.PROC. art. 49.03 (Vernon Supp.1986) (Texas) and VA.CODE ANN. § 32.1–283 (1985) ("homicide") (Virginia). It appears that Virginia also allows an autopsy to be performed where a life insurance claim may be asserted. VA. CODE ANN. § 38.2–3539. "Physical examinations and autopsy—Each group accident and sickness insurance policy shall· contain a provision that the insurer shall have the right (i) to examine the person for whom a claim is made when and as often as it may reasonably require during the pendency of claim under the policy and (ii) to make an autopsy where it is not prohibited by law."

**10.** Consistent with the foregoing, the court concurs with plaintiffs that, absent good cause, the autopsy should not include the deceased's head (and hands), inasmuch as they are body parts that are traditionally viewed by the family and friends of the deceased prior to burial. Defendants have not heretofore demonstrated good cause for an autopsy of the entire body. *Cf.* Affidavit of Dr. Maddox.

**11.** *E.g., Marroni v. Matey,* 82 F.R.D. 371, 372 (E.D.Pa.1979); *Stuart v. Burford,* 42 F.R.D. 591, 593 (N.D.Okla.1967).

plication by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause'...." *Id.* at 118–119, 85 S.Ct. at 242–243.

For these settled reasons the court rejects defendants' request for a blanket order of the breadth defendants propose, *see* note 3, *supra*, that is, one that would apply to any and all cases in which a plaintiff dies. The "good cause" and "in controversy" requirements are met only when the movant produces sufficient information about the particular decedent, not when the movant generalizes about asbestos-injured claimants as a whole. As noted above, the court cannot order even a non-invasive physical examination based on generalities; *a fortiorari*, it cannot order an autopsy.

### C. What Should Be the Procedure for Presenting Individual Motions?

Having determined that Rule 35(a) allows the conducting of autopsies, and having decided to consider motions for autopsies on an individual case basis, the court now turns to the question of what procedure should be followed. Before deciding this question the court will permit input from the parties in the form of written submissions. The parties should address in their written submissions the preliminary concerns of the court outlined below.

The parties should address the method for presenting the evidence to the court. The procedural aspects of the motions should not vary from the practice for more routine motions. As the Court teaches in *Schlagenhauf*, the movant need not prove its case on the merits, nor is an evidentiary hearing required in all cases. 379 U.S. at 119, 85 S.Ct. at 243. The showing may be made by affidavits or other usual methods short of a hearing. *Id.* In fact, Rule 43(e) permits evidence on motions to be heard on affidavits.[12]

The parties should also address methods for attempting to identify, in advance of death, those plaintiffs with respect to whom defendants will move for an autopsy. If adequate advance screening is not done the court may become overburdened with deciding autopsy motions on a highly accelerated pace. Families and survivors may grieve unduly because they cannot bury a loved one during the time it takes the attorneys and court to decide whether an autopsy shall be performed.

Consistent with the necessity for expedited decision-making by a justice system already overburdened, the parties should address whether the court should delegate to a special master the initial determination of any such motion (or whether such delegation would unduly lengthen the process).

The parties should also address who shall bear the cost for conducting the autopsy.

The court welcomes input from the parties regarding any other concerns or potential problems that the court has not outlined, along with suggested solutions.

The written submissions permitted by this order shall be submitted no later than 30 days after this order is filed. The parties may reply to opposing written submissions no later than 40 days after this order is filed. No briefs are required.

### IV.

The motion is granted in part and denied in part.

SO ORDERED.

**12.** The court has used the Rule 43(e) procedure in determining preliminary injunction motions. *See, e.g., Central States, Southeast and Southwest Areas Pension Fund v. T.I.M.E.–DC, Inc.,* 639 F.Supp. 1468 (N.D.Tex.1986); *Pesch v. First City Bank of Dallas,* 637 F.Supp. 1539 (N.D.Tex. 1986).