LINDA FOSSE, Ex'r of the Estate of Robert Pace, Deceased, Plaintiff-Appellant, v. JOSEPH PENSABENE, Defendant-Appellee.

Second District No. 2—04—1267

Opinion filed November 1, 2005.

David F. Monteleone, of Schirger, Monteleone & Hampilos, P.C., of Rockford, for appellant.

Marc F. Benjoya and Brian A. Schroeder, both of Cassidy, Schade & Gloor, L.L.P., of Chicago, for appellee.

Alexandra De Saint Phalle, of Londrigan, Potter & Randle, P.C., of Springfield, for *amicus curiae*.

JUSTICE HUTCHINSON delivered the opinion of the court:

This matter comes before the court as an interlocutory appeal brought pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). Plaintiff, Linda Fosse, as executor of the estate of Robert Pace,

deceased, appeals the trial court's order barring the introduction of the results or other evidence obtained from the autopsy performed upon the decedent. In so ruling, the trial court certified three questions for appeal:

> "Whether an autopsy of the plaintiff's decedent performed during the pendency of litigation was discovery";

> "If the answer to the preceding question is in the affirmative, whether it is an abuse of discovery rules for a plaintiff to obtain an autopsy on the corpse of the plaintiff's decedent without notice to the defense"; and

> "If the answer to each of the preceding questions is in the affirmative, whether barring introduction of evidence obtained from such autopsy is an appropriate sanction."

In an order dated January 21, 2005, this court denied plaintiff's application for interlocutory appeal. See *Fosse v. Pensabene*, No. 2—04—1267 (2005). Plaintiff then petitioned for leave to appeal to the Illinois Supreme Court. In a supervisory order entered May 25, 2005, the Illinois Supreme Court denied plaintiff's petition for leave to appeal, but ordered this court to vacate its January 21, 2005, order and to allow the interlocutory appeal. See *Fosse v. Pensabene*, 215 Ill. 2d 595 (2005). In compliance with our supreme court's directive, we entered such an order on June 24, 2005, and now enter this opinion. Having considered the merits of the present case, we answer the first certified question in the affirmative, we answer the second certified question in the negative, we decline to answer the third certified question, and we reverse and remand.

The record reflects that on May 6, 2003, the decedent, Robert Pace, underwent a medical procedure at SwedishAmerican Hospital in Rockford (the hospital). During the procedure, a cardiologist performed a cardiac catheterization and coronary angiography on Pace. Shortly thereafter, Pace experienced low blood pressure, low hemoglobin level, a firm and distended abdomen, and sweating. Defendant, Dr. Joseph Pensabene, was notified by telephone of Pace's symptoms, and he ordered a CT scan. After receiving the results of the scan, defendant ordered continued observation of Pace. Approximately one hour later, defendant was informed that Pace's hemoglobin level had continued to drop, and defendant ordered that Pace be transferred to the cardiac care unit. Pace died approximately one hour later.

On August 8, 2003, plaintiff, the decedent's daughter, initiated a cause of action against defendant for medical negligence. Plaintiff's complaint included one count brought pursuant to the Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 2002)) and one count brought pursu-

ant to the Survival Act (755 ILCS 5/27—6 (West 2002)). Plaintiff alleged, *inter alia*, that all of defendant's care and treatment of the decedent was via telephonic communication with the decedent's nurses and that defendant failed to see or physically examine the decedent until he was transferred to the cardiac care unit. Plaintiff alleged, *inter alia*, that defendant's failure to perform a proper physical examination of the decedent proximately caused his suffering and his death. Plaintiff named as respondents in discovery the hospital, Rockford Cardiology Associates, Ltd., Jagdeep Tung, Marc Whitman, Erik Englehart, and the cardiologist, Jagdeep Sagharwal. Defendant filed an answer, denying plaintiff's material allegations.

On August 19, 2003, defendant served "Wrongful Death Interrogatories" requesting plaintiff to state "whether any autopsy was performed on the decedent and, if so, give the name and last known address of the person performing the said autopsy, the date it was performed, and the place it was performed." On September 15, 2003, plaintiff answered defendant's interrogatories. Plaintiff identified the decedent's family members, friends, and various hospital personnel as individuals who had knowledge of the facts concerning matters alleged in the complaint. Plaintiff also specifically responded that "[a]n autopsy was not performed."

On October 3, 2003, plaintiff obtained a permit to exhume the decedent's body. The decedent's body was exhumed on October 6, 2003. On October 6, 2003, L.W. Blum, M.D., a forensic pathologist associated with the Winnebago County coroner's office, performed an autopsy on the decedent's body. Plaintiff's counsel was present at the autopsy and took photographs; the autopsy was also videotaped. On October 24, 2003, Dr. Blum prepared a seven-page report. The report reflects that Dr. Blum concluded that the cause of the decedent's death was "hemorrhagic shock due to retroperitoneal and intraperitoneal hemorrhage following arterial catheterizations for a coronary angiogram and left ventriculogram." Dr. Blum retained sections of the decedent's internal organs for further examination.

On October 31, 2003, plaintiff supplemented her prior discovery responses to defendant. Plaintiff tendered to defendant a copy of Dr. Blum's report. The supplement advised defendant of the following:

"[O]n October 13, 2003, Dr. Larry Blum performed an autopsy on Mr. Pace's remains. The procedure took place at the Winnebago County Morgue, 240 West State Street, Rockford, Illinois. Photographs and a videotape were made during that procedure. Dr. Blum's report is attached hereto. If anyone would like to view the videotape and/or photographs, please advise. Of course, they may

be copied as well. We hereby disclose Dr. Blum as a controlled expert witness."

On July 2, 2004, defendant filed a motion to dismiss plaintiff's complaint pursuant to Supreme Court Rule 219 (210 Ill. 2d R. 219) because of plaintiff's failure to provide advance notice of the exhumation and autopsy. In the alternative, defendant moved to bar all evidence of the autopsy and all evidence derived from the autopsy. Defendant argued, *inter alia*, that the autopsy constituted destructive testing of the decedent's body and that plaintiff should be sanctioned for deliberately failing to provide defendant with any advance notice of the exhumation or the autopsy. On August 13, 2004, plaintiff responded, arguing that the defense had not made any request for an autopsy; the defense had not requested a protective order to preserve the body; there was no discovery order in place that plaintiff violated; and there was no statute, case law, or supreme court rule that imposed an affirmative duty to notify the defense that an autopsy would take place. Plaintiff concluded that the trial court could not sanction her because there was no discovery violation.

The parties briefed the motion, and on September 16, 2004, the trial court conducted a hearing on it. We note that the record on appeal does not contain a report of proceedings from the September 16 hearing. The trial court's written order reflects only that defendant's motion to dismiss was denied but the motion for sanctions was granted. The written order also ordered that, as a sanction, the introduction of the autopsy results and any evidence obtained from the autopsy was barred. On September 17, 2004, plaintiff moved the trial court for an order to certify the question of law involved for interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). On December 13, 2004, the trial court granted plaintiff's motion and certified the following questions:

"Whether an autopsy of the plaintiff's decedent performed during the pendency of litigation was discovery";

"If the answer to the preceding question is in the affirmative, whether it is an abuse of discovery rules for a plaintiff to obtain an autopsy on the corpse of the plaintiff's decedent without notice to the defense"; and

"If the answer to each of the preceding questions is in the affirmative, whether barring introduction of evidence obtained from such autopsy is an appropriate sanction."

During the pendency of this process, plaintiff filed an amended

complaint on May 5, 2005, naming as additional defendants the hospital, the cardiologist, and Rockford Cardiology Associates, Ltd.

"This court's examination in an interlocutory appeal is strictly limited to the questions certified by the trial court and, as with all questions of law, is a *de novo* review." *Thompson v. Gordon*, 356 Ill. App. 3d 447, 451 (2005), *appeal allowed*, 216 Ill. 2d 736 (2005). We will ordinarily not expand the question under review to answer other questions that could have been included but were not. *Dearing v. Baumgardner*, 358 Ill. App. 3d 540, 542 (2005), citing *Jones v. City of Carbondale*, 217 Ill. App. 3d 85, 88 (1991). Our task is to answer the certified questions rather than to rule on the propriety of any underlying order. *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 998 (2004). "In the interests of judicial economy and reaching an equitable result, however, a reviewing court may go beyond the certified question[s] and consider the appropriateness of the order giving rise to the appeal." *P.J.'s Concrete Pumping Service*, 345 Ill. App. 3d at 998-99, citing *Bright v. Dicke*, 166 Ill. 2d 204, 208 (1995).

In the present case, the first question we are called upon to consider is whether the autopsy of plaintiff's decedent performed during the pendency of litigation was discovery. " 'Discovery' is defined as 'the disclosure of facts, deeds, documents, or other things in the exclusive knowledge or possession of one party, which are necessary to the party seeking discovery as part of a cause of action or defense in an action pending.' " *Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 44-45 (2001), quoting 27 C.J.S. *Discovery* § 2(a) (1999). Thus, in order for "discovery" to occur, a legal action must be pending, and there must be a party to the action who seeks information from an opposing litigant or from a third party. *Burger*, 198 Ill. 2d at 45.

In the present case, neither party disputes that a legal action is pending, inasmuch as the certified question presented includes the phrase "during the pendency of litigation." Further, defendant is a party to the action and sought from plaintiff, through the use of interrogatories, information regarding an autopsy of plaintiff's decedent. Therefore, the parties were engaged in the process of "discovery" during the time the autopsy was performed on plaintiff's decedent.

However, an autopsy, in and of itself, is not "discovery"; it is a "discovery method." See 166 Ill. 2d R. 201(a). Supreme Court Rule 201(a) lists discovery methods by which a party may obtain information, including physical examination of a person. 166 Ill. 2d R. 201(a). An autopsy is a postmortem examination of an individual to ascertain the cause of death. See Black's Law Dictionary 145 (8th ed. 2004). We

believe that an autopsy is a type of physical examination of a person, albeit a person no longer living, and thus fits within the methods of discovery listed in Rule 201(a). *Cf. In re Certain Asbestos Cases*, 112 F.R.D. 427, 433 (N.D. Tex. 1986) (ruling that a decedent whose medical condition at death is "in controversy" is a "person"); *Belkow v. Celotex Corp.*, No. 89 C 3049 (N.D. Ill. May 22, 1989) (implicitly endorsing the district court's ruling from *In re Certain Asbestos Cases*). Therefore, we answer the first certified question as follows: an autopsy is a discovery method by which a party may obtain information regarding any matter relevant to the subject matter involved in the pending action.

 Both plaintiff and *amicus curiae*, the Illinois Trial Lawyers Association, argue that the autopsy of plaintiff's own family member is privileged work product information because it produced information that plaintiff gathered through her own efforts. Rule 201(b)(2) discusses privilege and work product as follows:

> "All matters that are privileged against disclosure on the trial, including privileged communications between a party or his agent and the attorney for the party, are privileged against disclosure through any discovery procedure. Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney." 166 Ill. 2d R. 201(b)(2).

"The work product doctrine provides a broader protection than the attorney-client privilege and is designed to protect the right of an attorney to thoroughly prepare his case and to preclude a less diligent adversary attorney from taking undue advantage of the former's efforts." *Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc.*, 189 Ill. 2d 579, 591 (2000), citing *Hickman v. Taylor*, 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947).

Plaintiff and *amicus curiae* do not explain how a postmortem examination procedure fits within the scope of Rule 201(b)(2), other than by characterizing the examination as an "investigation." The certified question does not ask whether arranging for an autopsy is a discovery method or whether an attorney's observation of an autopsy being conducted is work product. We note that, on one hand, plaintiff asserts that arranging for an autopsy and having an autopsy conducted on her request is privileged work product. On the other hand, plaintiff is offering up a videotape of the entire examination and photographs to the defense upon request. Clearly, any mental impressions or theories plaintiff's counsel memorialized while observing the autopsy is work product (166 Ill. 2d R. 201(b)(2)), but no one is seeking the at-

torney's mental impressions or theories. Moreover, that plaintiff is offering the entire videotape to the defense suggests that plaintiff's counsel and the examiner performing the autopsy had no discussions that constituted investigation or were subject to the work product doctrine. Given the certified question posed by the trial court, we are unsure exactly what part of the autopsy examination plaintiff and *amicus curiae* are claiming to be privileged work product. We reiterate our answer to the first certified question; moreover, we decline to expand the question under review to answer other questions that could have been included but were not. See *Dearing*, 358 Ill. App. 3d at 542.

The second certified question presented asks "whether it is an abuse of discovery rules for a plaintiff to obtain an autopsy on the corpse of the plaintiff's decedent without notice to the defense." In short, the answer is that it depends upon whether there is an existing defense interrogatory requesting notice or whether there is a court order requiring such notice. And in this case, there is neither. Plaintiff argues that her conduct, *i.e.*, arranging for a postmortem study of the decedent's remains without notice to the defense, cannot be deemed an unreasonable noncompliance with the rules because the rules themselves are silent on the entire practice of independent investigation. Plaintiff argues that no statute or case law exists that requires a plaintiff to give notice of an intent to exhume remains so that an autopsy can be performed.

Plaintiff is only partially correct in stating that "Illinois has not recognized the right of a defendant to attend, have notice of, or participate in the autopsy of a victim's remains." Actually, our workers' compensation statutes provide for such autopsies in appropriate cases. See 820 ILCS 310/12(b) (West 2004); see also *Freeman United Coal Mining Co. v. Industrial Comm'n*, 308 Ill. App. 3d 578 (1999). Section 12(b) of the Workers' Compensation Act provides in part:

> "Whenever, after the death of an employee, any party in interest files an application for adjustment of claim under this Act, and it appears that an autopsy may disclose material evidence ***, the commission, upon petition of either party, may order an autopsy at the expense of the party requesting same, and if such autopsy is so ordered, the commission shall designate a competent pathologist to perform the same, and shall give the parties in interest such reasonable notice of the time and place thereof as will afford a reasonable opportunity to witness such autopsy in person or by a representative." 820 ILCS 310/12(b) (West 2004).

Moreover, the Illinois Insurance Code features an autopsy provision

through which an insured agrees that an autopsy will be conducted when necessary to resolve a claim or to gather other relevant information about the insured. See 215 ILCS 5/357.11 (West 2004); see also *Schachner v. Employers' Liability Assurance Corp.*, 268 Ill. App. 503 (1932). Section 357.11 of the Illinois Insurance Code states:

> "The company at its own expense shall have the right and opportunity to examine the person of the insured when and as often as it may reasonably require during the pendency of a claim hereunder and to make an autopsy in case of death where it is not forbidden by law." 215 ILCS 5/357.11 (West 2004).

The present case, however, does not implicate any provisions of the Workers' Compensation Act or the Illinois Insurance Code. The present case concerns the performance of an evidentiary autopsy in a non-asbestos-related tort case and how a court should resolve discovery issues that arise when the individual who was allegedly maltreated is deceased. As we stated, our answer depends upon whether there is an existing defense interrogatory requesting notice or whether there is a court order requiring such notice. Although plaintiff argues that the rules are silent, we believe that one of the more appropriate discovery rules that should govern this case is Supreme Court Rule 215, pertaining to the physical and mental examination of parties and other persons. See 210 Ill. 2d R. 215(a); see also *Belkow*, No. 89 C 3049 (employing Fed. R. Civ. P. 35(a)). Rule 215(a) provides in relevant part:

> "In any action in which the physical \*\*\* condition of a party or of a person in the party's custody or legal control is in controversy, the court, upon notice and on motion made within a reasonable time before the trial, may order such party to submit to a physical \*\*\* examination by a licensed professional in a discipline related to the physical \*\*\* condition which is involved. \*\*\* The order shall fix the time, place, conditions, and scope of the examination and designate the examiner. The party calling an examiner to testify at trial shall disclose the examiner as a controlled expert witness in accordance with these rules." 210 Ill. 2d R. 215(a).

The rationale behind this rule is that, when one seeks to recover damages on the basis of one's physical injuries, the physical condition is at issue. *People ex rel. Noren v. Dempsey*, 10 Ill. 2d 288 (1957); see also 166 Ill. 2d R. 215, Committee Comments (stating that the rule was "intended to provide an orderly procedure for the examination of civil litigants whose physical or mental condition is in controversy"). Our supreme court explained the purpose and requirements of Rule 215 as follows:

"Rule 215 is a rule of discovery, the purpose of which is to permit the discovery of facts which will assist the trier of fact to reach a correct determination of the issues before it. This rule does not permit unlimited and indiscriminate mental and physical examinations of persons but by its terms gives a trial court discretion to order such examinations only when certain requirements are met. The person sought to be examined must be a party (or a person in his custody or legal control), the physical or mental condition of that person must be in controversy, and good cause must be shown for the examination. Then, and only then, is discovery of that person's physical or mental condition authorized by this rule.

\*\*\* Rule 215 contemplates that the trial court in its discretion may order the physical or mental examination under appropriate conditions when all requirements of the rule have been met \*\*\*."

*In re Conservatorship of the Estate of Stevenson*, 44 Ill. 2d 525, 529-30 (1970).

In the present case, plaintiff is seeking to recover damages on the basis of the decedent's injuries, which allegedly led to his death, and therefore, the decedent's physical condition is at issue. See *Noren*, 10 Ill. 2d at 293. Because plaintiff placed the decedent's medical condition squarely at issue, defendant was entitled pursuant to Rule 215 to file a motion requesting the trial court to order an autopsy to be performed upon the decedent. See *In re Exhumation of the Body of Bernardi*, 132 Ill. App. 2d 186, 189 (1971) (holding that a court may authorize an exhumation and an autopsy in certain situations). Defendant, however, did not file a motion pursuant to Rule 215 requesting the trial court to order an examination of the decedent. Therefore, there was no court ord r requiring plaintiff to provide to the defense advance notice of an autopsy of the decedent.

Defendant, however, asserts that an autopsy is "destructive testing" and that, therefore, he was entitled to advance notice of the autopsy. In support of his assertion, defendant cites to *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112 (1998). In *Shimanovsky*, the plaintiffs filed suit against General Motors Corporation in June 1986, alleging that a defect in their vehicle caused a crash in which Mildred Shimanovsky suffered injuries. Before filing suit, however, the plaintiffs in 1985 retained a mechanical engineer to investigate whether the vehicle possessed a defect that may have caused the crash. The mechanical engineer determined that an internal inspection of the vehicle's power-steering mechanism was necessary, and in September 1985 he removed the power-steering mechanism from the vehicle and disassembled it. The mechanical engineer recommended that the plaintiffs retain a metallurgist to determine whether certain

grooves he discovered in one of the power-steering components were a possible defect. The plaintiffs retained a metallurgist, who then sectioned some of the components and performed various tests to determine the cause of the grooves. The metallurgist concluded that the grooves were not caused by the crash but were the result of long-term wear. The mechanical engineer reviewed the metallurgist's findings and concluded that the wear in the power-steering mechanism caused the vehicle's power steering to fail. *Shimanovsky*, 181 Ill. 2d at 115-16.

The plaintiffs then in June 1986 initiated a products liability cause of action against General Motors Corporation. On the "eve of trial," the defendant moved to dismiss the case or, in the alternative, bar any evidence of the condition of the power-steering mechanism. *Shimanovsky*, 181 Ill. 2d at 117. The defendant argued that it was entitled to such relief pursuant to Rule 219(c), as a sanction for the destruction of the power-steering components, without notice, by the plaintiffs' expert witness. The trial court granted the defendant's motion to dismiss, and the plaintiffs appealed. The reviewing court determined that the trial court did not err when it imposed a sanction on the plaintiffs for the destructive testing, but that the trial court did abuse its discretion when it dismissed the complaint without first considering the degree of prejudice suffered by the defendant. *Shimanovsky*, 181 Ill. 2d at 118.

The two issues presented to the supreme court in *Shimanovsky* were (1) whether the trial court possessed the authority under Rule 219(c) to impose a sanction upon the plaintiffs for destructive testing of evidence prior to commencement of the lawsuit, and (2) if the trial court did possess the authority to impose a sanction, whether dismissal was the appropriate sanction. *Shimanovsky*, 181 Ill. 2d at 119-23. The plaintiffs did not dispute that the tests performed either altered the condition of or partially destroyed the power-steering components. The *Shimanovsky* court noted that a potential litigant owed a duty to take reasonable measures to preserve the integrity of relevant and material evidence, and it recognized the value of destructive testing as a discovery tool but only to the extent that the rights of the opposing party were not unduly prejudiced. *Shimanovsky*, 181 Ill. 2d at 121-22. The court recognized that Rule 201(b)(1) provided that both parties were entitled to full disclosure by discovery of any relevant matter, including matters that relate to the defense of a party. *Shimanovsky*, 181 Ill. 2d at 122, citing 166 Ill. 2d R. 201(b)(1). It concluded that the defendant had a right to perform tests on the power-steering components to formulate its defense to the products liability action

but that the plaintiffs' destructive testing interfered with the defendant's right to such discovery. In determining that the trial court had the authority to impose a sanction on the plaintiffs for the destructive testing of evidence, the *Shimanovsky* court ruled, "[u]nder the specific circumstances of this case, we cannot say that the trial court abused its discretion in determining that plaintiffs' actions were an unreasonable noncompliance with discovery rules." *Shimanovsky*, 181 Ill. 2d at 122-23.

The *Shimanovsky* court then addressed the propriety of the trial court's dismissal of the plaintiffs' case as an appropriate sanction and determined that the trial court's ruling was drastic and unreasonable. It thus remanded the case to the trial court to impose a sanction that did not "totally prevent plaintiffs from presenting evidence regarding the condition of the power-steering mechanism." *Shimanovsky*, 181 Ill. 2d at 129.

In the present case, defendant argues that the *Shimanovsky* case supports his argument that the autopsy Dr. Blum performed on the decedent's body altered or partially destructed the decedent's body and therefore was destructive testing. Defendant concludes that, based on *Shimanovsky*, plaintiff's failure to provide defendant with advance notice of the autopsy was a sanctionable discovery violation.

Initially, we note that *Shimanovsky* involved the destruction of evidence prior to the commencement of a lawsuit, whereas in the present case, the cause of action had already been initiated and the parties were engaged in discovery. Because *Shimanovsky* involved the presuit destruction of evidence, there were no discovery violations for which to sanction the plaintiffs. We further reject defendant's unsupported conclusion that the autopsy in the present case constituted "destructive testing" merely because the decedent's body has been physically altered. See *Shimanovsky*, 181 Ill. 2d at 120, citing *Sarver v. Barrett Ace Hardware, Inc.*, 63 Ill. 2d 454, 458-59 (1976) (defining "destructive testing" as "the physical testing of tangible objects such that the testing involves the alteration or partial destruction of the object"). First, the record reflects that upon the death of the decedent, his body was embalmed and buried. Therefore, his body was physically altered even before the autopsy was performed. Second, an autopsy, by its very nature, involves an external and internal examination of the body of a deceased person, subject to the provisions of the Autopsy Act (410 ILCS 505/0.01 *et seq.* (West 2004)). Third, and more important, the examination was videotaped, photographs were taken, and, although some portions of the decedent's internal organs were retained by Dr. Blum for subsequent histologic examination, the record reflects

that nothing was destroyed or disposed of to prevent defendant from seeking or having another autopsy performed on decedent. Therefore, it appears that plaintiff has taken "reasonable measures to preserve the integrity of relevant and material evidence," in this case, her decedent. See *Shimanovsky*, 181 Ill. 2d at 121.

■ We also reject defendant's interpretation of *Shimanovsky*. *Shimanovsky* does not stand for the proposition that one party is entitled to advance notice before the other party undertakes testing of evidence. Indeed, the *Shimanovsky* court rejected the defendant's "claims of surprise" and remarked that the defendant's claims served to highlight its own lack of diligence in seeking discovery of the automotive parts. *Shimanovsky*, 181 Ill. 2d at 125. We believe that *Shimanovsky* supports our conclusion that defendant was entitled pursuant to Rule 215 to file a motion requesting the trial court to order an autopsy to be performed upon the decedent. It was not necessary for defendant to wait until plaintiff decided to have an autopsy of the decedent conducted or until plaintiff answered the interrogatories. See *Shimanovsky*, 181 Ill. 2d at 125. Rather, at any time after defendant filed his appearance, he could have sought a postmortem medical examination of the decedent through a proper discovery request pursuant to Rule 215(a) (210 Ill. 2d R. 215(a)). See *Shimanovsky*, 181 Ill. 2d at 125. Again, however, defendant never utilized the rule to request the trial court to order an autopsy to be performed on the decedent. Accordingly, because defendant never requested notice, we reject defendant's argument that he was entitled to advance notice of the autopsy that plaintiff arranged to have conducted on the decedent.

The other discovery rule that could appropriately govern in this case is Supreme Court Rule 213, pertaining to written interrogatories. See 177 Ill. 2d R. 213. Defendant, through the use of written interrogatories labeled "Wrongful Death Interrogatories" and presumably pursuant to Rule 213, asked only "whether any autopsy was performed on the decedent and, if so, give the name and last known address of the person performing the said autopsy, the date it was performed, and the place it was performed." Under the well-known maxim of construction, *inclusio unius est exclusio alterius*, or the inclusion of one is the exclusion of the other, it is clear that defendant phrased his interrogatory in the past tense to request only information about an autopsy that had been conducted and not an invitation or demand to view or participate in a future exhumation and autopsy of the decedent. See, *e.g.*, *Fisher v. Burstein*, 333 Ill. App. 3d 803, 807 (2002). Had defendant or defense counsel wished to participate in the

decedent's exhumation and autopsy, the interrogatory could have been phrased to request as much. Because defendant did not seek or request in the interrogatory to be notified of a future autopsy, plaintiff cannot be charged with having violated discovery rules when she later arranged for an autopsy to be performed on the decedent. See, *e.g.*, *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 104 (1995) (noting that a party cannot be found to have violated a discovery rule on a matter when the opposing party failed to present a question on the matter during discovery).

Because there was no court order requiring plaintiff to provide to the defense notice of an autopsy, and because defendant's interrogatories did not seek or request to be notified of a future autopsy, we conclude that plaintiff cannot be found to have violated discovery rules when she arranged to have an autopsy performed on the decedent without notifying defendant.

Defendant counters, however, that plaintiff violated the rules of discovery because his interrogatories requested information regarding an autopsy of the decedent, and plaintiff failed to inform him in advance of the intent to perform an autopsy on the decedent. In support of his assertion that plaintiff violated discovery rules by knowingly concealing advance notice of the autopsy, defendant cites *Schindler v. Walker*, 256 Neb. 767, 592 N.W.2d 913 (1999), as being directly on point with the instant case.

In *Schindler*, the plaintiff's spouse suffered a neck fracture on July 10, 1992, and sought immediate medical treatment. The defendants treated the plaintiff's spouse, but he died approximately one week later. The plaintiff initiated a medical negligence action against the defendants, and beginning in May 1994 the defendants served interrogatories on the plaintiff, seeking information regarding each of her experts' opinions. In April 1996, the plaintiff supplemented her responses to the defendants' interrogatories to include the name of her expert, Okoye, and stated that his opinions were based on his "review of the medical evidence." *Schindler*, 256 Neb. at 778, 592 N.W.2d at 919. In May 1996, the defendants served a request for production on the plaintiff seeking information regarding any autopsy or postmortem examination of the decedent. In June 1996, the plaintiff responded to the defendants' request for production and stated that she was "not aware of any autopsy or postmortem examination." *Schindler*, 256 Neb. at 777-78, 592 N.W.2d at 919-20. On September 16, 1996, the plaintiff applied for a disinterment permit, and Okoye performed an autopsy on September 26. The plaintiff amended her discovery responses on October 1, 1996, to notify the defendants of

Okoye's findings resulting from the autopsy. This was the first notice the defendants had received of the autopsy; trial was scheduled to begin on October 15, 1996. *Schindler*, 256 Neb. at 779, 592 N.W.2d at 920.

The defendants brought a motion to strike Okoye's testimony and any evidence acquired from the autopsy. The trial court granted the defendants' motion to the extent that the plaintiff was prohibited from introducing any evidence relating to the autopsy. The plaintiff appealed this ruling, and the Nebraska Supreme Court affirmed the trial court's ruling. The Nebraska Supreme Court reviewed its rules of discovery and the chronology of events, noting that no notice of the autopsy was provided to the defendants until October 1, "several days after the autopsy was performed and about 2 weeks before trial." *Schindler*, 256 Neb. at 779, 592 N.W.2d at 920. The supreme court upheld the trial court's finding that the plaintiff failed to seasonably amend discovery responses that were no longer accurate, concluding that the plaintiff's failure to amend her discovery responses was "in substance a knowing concealment." *Schindler*, 256 Neb. at 779, 592 N.W.2d at 920.

We disagree with defendant that *Schindler* is directly on point and compels the same conclusion. Initially, we note that this court is not bound to follow decisions from other states. *North Pole Corp. v. Village of East Dundee*, 263 Ill. App. 3d 327, 337 (1994). To the extent, though, that *Schindler* has a fact pattern that addresses the issue of evidentiary autopsies and there is no Illinois authority that speaks to this issue, we will look to *Schindler* as persuasive authority for our analysis. See *In re Estate of Zenkus*, 346 Ill. App. 3d 741, 746 (2004). We also note that Nebraska's rules of discovery expressly provide that a party has a duty to seasonably supplement his or her discovery responses and that, under some circumstances, the failure to amend would be "in substance a knowing concealment." Neb. Ct. R. 26(e) (rev. 1996). Our supreme court's Rule 213 is dissimilar and provides only that "[a] party has a duty to seasonably supplement or amend any prior answer or response whenever new or additional information subsequently becomes known to that party." 210 Ill. 2d R. 213(i). Because the rules are different, we will look to our state's rules of interpretation and construction for guidance in our analysis.

The express purpose of Rule 213 is to discourage tactical gamesmanship and prevent surprise. *Scassifero v. Glaser*, 333 Ill. App. 3d 846, 854-55 (2002). Also pertinent to our discussion is Rule 218(c), which provides in part:

"All dates set for the disclosure of opinion witnesses and the completion of discovery shall be chosen to ensure that discovery will be completed not later than 60 days before the date on which the trial court reasonably anticipates the trial will commence." 166 Ill. 2d R. 218(c).

"Rules 213(g), 213(i), and 218(c) work together to ensure that, upon written interrogatory and no later than 60 days prior to the anticipated date of trial, the parties disclose the subject matter, conclusions, opinions, bases, qualifications, and all reports of a witness who will offer opinion testimony." *Scassifero*, 333 Ill. App. 3d at 855, citing 177 Ill. 2d Rs. 213(g), (i), and 166 Ill. 2d R. 218(c). We determine that defendant has no basis upon which he may claim "surprise," as these events have occurred fairly early on in the discovery proceedings, and not on the eve of trial. *Contra Schindler*, 256 Neb. 767, 592 N.W.2d 913. Plaintiff filed suit in August 2003 and within three months of filing suit she informed defendant that she had had an autopsy performed on the decedent and she tendered to defendant a supplemental response to his interrogatories, notifying him of the autopsy and providing him with Dr. Blum's report and an offer to view the videotape and photographs. Plaintiff seasonably supplemented her discovery responses to defendant, as the record reflects that, within seven days of receiving Dr. Blum's report, she apprised defendant of the report, offered the photographs and videotape to defendant for viewing or reproducing, and named Dr. Blum as a controlled expert witness. See 210 Ill. 2d R. 213(i). The record further reflects that the case was still far from being tried, as defendant waited eight months before filing his motion to dismiss plaintiff's complaint based on her failure to provide advance notice of the autopsy.

Moreover, based on the circumstances in the present case, we find no violation of Rule 213 on the part of plaintiff. We have already determined that defendant could have filed a Rule 215 motion requesting the trial court to order an autopsy to be performed upon the decedent. We have already determined that plaintiff was not required to provide defendant with advance notice of her intent to have an autopsy performed, because defendant did not request that information in his written "Wrongful Death Interrogatories" to plaintiff nor did defendant request the trial court to order plaintiff to provide such advance notice. In *Schindler*, the plaintiff disclosed Okoye, the expert she had retained to either perform the autopsy or interpret the autopsy report, in April 1996; but then, in response to the defendants' May 1996 interrogatories, she stated that she was "not aware of any

autopsy or postmortem examination." *Schindler*, 256 Neb. at 777-78, 592 N.W.2d at 919-20. In the present case, there was no concealment akin to *Schindler*, *i.e.*, plaintiff did not disclose Dr. Blum as an expert and then disavow any knowledge of an autopsy. We, therefore, find the circumstances in *Schindler* distinguishable from the circumstances in the present case and decline to follow it.

In conclusion, we answer the second certified question as follows: based on the rules of discovery and based on the phraseology of defendant's interrogatories in the present case, plaintiff did not abuse the discovery rules when she obtained an autopsy on the corpse of her decedent without notice to the defense.

The third certified question asks, "[i]f the answer to each of the preceding questions is in the affirmative, whether barring introduction of evidence obtained from such autopsy is an appropriate sanction." Under the facts of the present case, we answered the second certified question in the negative. Therefore, the third issue is moot because it is no longer applicable to the resolution of the case, and we decline to answer it. However, in the interests of judicial economy and reaching an equitable result, it is necessary that we go beyond the certified questions and consider the appropriateness of the order giving rise to the appeal. See *P.J.'s Concrete Pumping Service*, 345 Ill. App. 3d at 998-99, citing *Bright*, 166 Ill. 2d at 208. Here, the trial court implicitly found that plaintiff had abused the rules of discovery and, in its written order, sanctioned plaintiff by barring the autopsy results of the decedent and any other evidence obtained pursuant to the autopsy. Given our resolution of the certified questions, we will consider the propriety of the trial court's underlying order.

"The admission of evidence pursuant to Rule 213 is within the sound discretion of the trial court, and the court's ruling will not be disturbed absent an abuse of that discretion." *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 109 (2004), citing *Susnis v. Radfar*, 317 Ill. App. 3d 817, 828 (2000). It is well settled that a trial court may order sanctions against a party refusing to comply with discovery. 166 Ill. 2d R. 219(c); *In re Estate of Andernovics*, 197 Ill. 2d 500, 510 (2001). Upon a finding of a discovery violation, the decision whether to impose sanctions lies within the sound discretion of the trial court, and that decision will not be reversed absent an abuse of discretion. *Sullivan*, 209 Ill. 2d at 110-11. However, if a party has not committed a discovery violation, then an order of sanctions is not appropriate. See, *e.g.*, *Leonardi*, 168 Ill. 2d at 104 (noting that a party cannot be found to have violated a discovery rule on a matter when the opposing party failed to present a question on the matter during discovery); *Morgan v. Rich-*

*ardson*, 343 Ill. App. 3d 733, 737-38 (2003) (refusing to enter a sanction because plaintiff complied with discovery).

■ Here, the order giving rise to the appeal arose from the trial court's decision to bar the autopsy results and any other evidence obtained pursuant to the autopsy, presumably because the trial court determined that defendant had a right to advance notice of the autopsy. As stated above, we noted that defendant could have sought a postmortem medical examination of the decedent with a proper discovery request pursuant to Rule 215(a) (210 Ill. 2d R. 215(a)); however, defendant never utilized the rule to request the trial court to order an autopsy to be performed on decedent. We therefore rejected defendant's argument that he was entitled to advance notice of the autopsy that plaintiff arranged to have conducted on the decedent. We also determined that, based on the phraseology of defendant's interrogatories, defendant did not seek or request to be notified of a future autopsy. Therefore, plaintiff cannot be charged with having violated discovery rules when she later arranged for an autopsy to be performed on the decedent. We, therefore, hold that the trial court abused its discretion when it granted defendant's motion and barred the autopsy results of the decedent and any other evidence obtained pursuant to the autopsy. Accordingly, we reverse the trial court's order and vacate the sanction imposed upon plaintiff, and we remand for further proceedings.

We recognize that, on remand, defendant and the later added defendants may seek their own exhumation and postmortem medical examination of the decedent pursuant to Rule 215. The most important function of a court of review is to provide direction to the trial court as to how to address issues that are likely to arise on remand. See *Clayton v. County of Cook*, 346 Ill. App. 3d 367, 378 (2003). Consequently, we next address factors that a trial court should consider before authorizing a request for a person in a party's custody or legal control to submit to a physical examination for evidential purposes in a civil case.

Rule 215(a) vests broad discretion in the trial court to order examinations, but the trial court must insure that the statutory requirements are met and that indiscriminate examinations are not permitted. *In re Estate of Silverman*, 257 Ill. App. 3d 162, 171 (1993). Rule 215(a) requires that a motion be "made within a reasonable time before the trial" and that it "shall suggest the identity of the examiner and set forth the examiner's specialty or discipline." 210 Ill. 2d R. 215(a). The trial court should also determine whether the party seeking the examination has shown "good cause" for ordering a physical

examination. See *Thompson v. Palos Community Hospital*, 254 Ill. App. 3d 836, 839-42 (1993).

Moreover, "evidentiary autopsy cases present a panoply of legal and emotional issues and problems. Courts should not order autopsy relief too lightly, nor should they hesitate to require it when it is needed. Courts should endeavor to balance the interests of the parties, continuing to do what justice requires for both." J. Jones, *Evidentiary Autopsies*, 61 U. Colo. L. Rev. 567, 624 (1990). In doing so, the trial court must have information upon which it may adequately evaluate a motion for an autopsy. For example, such information may include what the party demanding the autopsy wants to prove, whether a strong need supports the autopsy request, and whether an autopsy is likely to disclose what the party seeks. 61 U. Colo. L. Rev. at 598. Because the record reflects that defendant has not made a motion for examination pursuant to Rule 215, we make no decision as to how the trial court in the present case should rule in the event a motion is brought. Our discussion here should serve only to guide the trial court should defendant or a newly added defendant present such a motion.

First certified question answered; second certified question answered; third certified question not answered; order reversed and cause remanded.

McLAREN and GROMETER, JJ., concur.