# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Jarke v. Mondry*, 2011 IL App (4th) 110150

---

| | |
|---|---|
| Appellate Court Caption | MICHELE JARKE and ANTHONY SCHAFFER, Plaintiffs-Appellants, v. BRANDY MONDRY, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-11-0150 |
| Argued<br>Filed | August 24, 2011<br>September 30, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute over one plaintiff's right to inherit from his father, the trial court erred in holding plaintiff and his sister in contempt for refusing to comply with a court order to submit DNA samples, since the information provided by defendant, a younger sibling, in support of her motion for DNA testing was not persuasive and credible evidence that would lead the court to believe the DNA test would result in plaintiff's disinheritance. |
| Decision Under Review | Appeal from the Circuit Court of Logan County, No. 10-L-4; the Hon. Thomas M. Harris, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

James P. Brinkoetter, Jr. (argued), of Brinkoetter & Hassinger, of Decatur, for appellants.

Robert A. Stuart, Jr. (argued), of Brown, Hay & Stephens, LLP, of Springfield, for appellee.

Panel

JUSTICE POPE delivered the judgment of the court, with opinion.

Justices Turner and Cook concurred in the judgment and opinion.

**OPINION**

¶ 1 In January 2011, the trial court granted defendant Brandy Mondry's request pursuant to Supreme Court Rule 215 (Ill. S. Ct. R. 215 (eff. July 1, 2002) (since amended effective March 28, 2011)) for plaintiffs Michele Jarke and Anthony Schaffer to provide deoxyribonucleic acid (DNA) swab samples for the purpose of determining whether Anthony is Howard Schaffenacker's biological son. In February 2011, after plaintiffs refused to provide these DNA samples, the court held plaintiffs in contempt and ordered plaintiffs to each pay a $100 monetary penalty. Plaintiffs appeal, arguing the court erred in ordering plaintiffs to submit the DNA samples. We reverse and remand.

¶ 2                              I. BACKGROUND

¶ 3 Howard Schaffenacker and Joyce Schaffenacker were married on December 1, 1959. Joyce Schaffenacker gave birth to three children. Michele was the oldest of the children. Anthony was the middle child, born April 9, 1964. Brandy was the youngest child, born February 5, 1977. Elmer Schaffenacker, Howard's father, died on February 15, 1982. Florence Schaffenacker, Howard's mother, died on March 15, 1983. Howard and Joyce Schaffenacker divorced on June 2, 1987. Joyce Schaffenacker remarried on December 22, 1989. Howard Schaffenacker died on January 25, 2010.

¶ 4 Florence Schaffenacker executed her last will and testament on December 15, 1961. The will gave a life estate in the property at issue to her husband, Elmer Schaffenacker, with a secondary and successive life estate to her son, Howard Schaffenacker. According to the will, "Upon the death of the survivor of my husband, *Elmer G. Schaffenacker*, and my son, *Howard Schaffenacker*, then the title to the residue of all my real estate shall vest in absolute fee simple in the then surviving bodily lineal descendants *per stirpes* of my son, *Howard Schaffenacker*." On October 18, 1977, Florence Schaffenacker executed a codicil to her will which gave Howard Schaffenacker's wife, Joyce Schaffenacker, a life estate interest in part of the land at issue if she survived Howard. However, her life estate terminated in the event

-2-

of her remarriage.

¶ 5      In March 2010, after Howard's death, Anthony and Michele filed a verified complaint against Brandy seeking the partition of three parcels of farm ground at issue. In April 2010, Brandy filed her answer to plaintiffs' complaint, claiming Anthony held no interest in the property at issue because he was not a bodily lineal descendant of Howard Schaffenacker.

¶ 6      In July 2010, Brandy filed a motion for determination of heirship pursuant to Supreme Court Rule 215(a). In the motion, Brandy stated she removed a toothbrush, battery-operated beard trimmer, Band-Aid, insulin needle, and tissues from Howard Schaffenacker's residence after he died. Brandy stated she believed all of these were utilized by Howard because he was the only resident of the home. Brandy attached affidavits from herself and Krista Kohn to the motion. Krista Kohn's affidavit stated she was 17 years old and had been acquainted with Howard and Brandy. According to the affidavit, Krista spoke with Howard on Father's Day in 2009 and asked if he had received anything from Anthony and Michele. Krista stated Howard replied:

> "That he had received nothing from Michele, but 'I did not get anything from Tony. He is not my son. I haven't received anything from him in the past and didn't expect to receive anything.' "

Brandy's own affidavit stated:

> "3. When she was approximately 13 years old, at a time when her mother had left the residence for shopping or other purposes, she and her father, Howard G. Schaffenacker, got into an argument. During this argument, her mother's sister interjected herself and said 'Howard, you do not take care of your kids.' Howard said 'I certainly do.' The Aunt then stated 'maybe you take care of the girls.' Howard said 'I take care of the boy, too.' The Aunt said 'You know he is not your son.'
>
> 4. Six or seven years ago while at her mother's house, Brandy overheard her mother and Aunt in discussions discuss Tony Schaffer's change of name, and her mother said 'Howard should not have a say. He's not Tony's father.' "

Brandy did not identify her aunt by name in the affidavit. In addition, she did not claim Howard ever told her he was not Anthony's father.

¶ 7      In August 2010, Michele and Anthony filed an objection to Brandy's motion for DNA testing. They argued Illinois law provides a strong presumption of legitimacy for any child born during a marriage. They also attached the evidence deposition of their mother, which they argued conclusively established Anthony was the son of Howard. They also stated Brandy had a pecuniary interest to make false claims regarding Anthony's lineage. In addition, they stated Krista Kohn lived with Brandy and shared the same bed. Further, they argued the physical evidence Brandy alleged she took from her father's residence was not readily identifiable and was susceptible to tampering. In addition, they stated Brandy would be unable to establish an adequate chain of custody with respect to the evidence. Finally, they stated Florence knew Anthony Schaffer personally, "had a good association with him[,] and would have had no reason to exclude him from the beneficial effects of her will." Anthony stated in an attached affidavit he had no reason to believe he was not Howard Schaffenacker's son.

¶ 8    On September 8, 2010, the trial court denied Brandy's request for DNA samples from Anthony and Michele, but granted Brandy leave to file an amended motion. The court stated:

> "I don't believe it's necessary, and this is subject to further argument if the parties wish. I don't believe it's necessary for Brandy Mondry at this point in time [to present evidence] sufficient to rebut the presumption of paternity when requesting leave to conduct [Rule] 215 testing. I believe that there does need to be some basis for the request though. And that's where I say the motion needs to establish the necessity for this type of testing."

In September 2010, Brandy filed an amended motion for determination of heirship suggesting Genelex as the laboratory to be used for the DNA testing. In November 2010, Brandy filed a second amended motion for determination of heirship, describing the DNA review process in more detail.

¶ 9    On December 23, 2010, the trial court heard arguments on Brandy's second amended motion. At the hearing, the trial court and Brandy's counsel had the following exchange:

> "THE COURT: So you would agree that a person such as your client making a request for a [Rule] 215 examination at this stage would have to present some showing of illegitimacy in order to be allowed to proceed with this DNA testing. It couldn't just be her coming in and saying I don't think Mr. Schaffer is the legitimate child of Howard Schaffenacker. There has to be something more than that.
>
> [BRANDY'S COUNSEL]: I think it's discretionary with the court, but if I was sitting as the court, I would have a great deal of difficulty if nothing was offered other than [']I don't believe that he's my brother, full brother,['] and I believe that the two affidavits that are submitted, one by my client and one by the third party, raised that issue and I think legitimately raises that issue for the court."

After hearing the parties' arguments, the court stated:

> "I'm going to reserve ruling on the issue because I do want to review these cases and I want to do a little more research on my own. I have to say the court is fairly reluctant to ignore the rebuttal [*sic*] presumption of legitimacy, even though we are at a different stage of the proceedings, that being the discovery stage. Certainly the [underpinnings] of that presumption still apply to some degree, and there is some importance in maintaining the presumption of legitimacy, you know, even at a discovery stage of a case, and I'm not quite sure and I haven't yet figured it out in my own mind what quantum of evidence is required at this stage to support the ordering of a [Rule] 215 examination. I think it has to be something more than just a voiced suspicion. I don't know that it is dependent on the evidence advanced being eventually admissible evidence, but there is some interesting issues here and the fact that this is a case of first impression is challenging."

¶ 10    On January 25, 2011, the trial court entered an order directing Anthony and Michele to submit to a DNA mouth swab. According to the court, the specific issue in controversy was whether Anthony was Howard's natural son. The court found the hearsay statements contained in the affidavits of Brandy and Krista, respectively, "were good and sufficient cause for the Court to exercise discretion in granting the Supreme Court Rule 215(a)

-4-

Motion."

¶ 11    In January 2011, Anthony filed a motion to reconsider. At the hearing on the motion in February 2011, the trial court stated:

> "I haven't heard anything here today that would cause me to decide the issue otherwise. I think that what is being suggested by plaintiffs here in terms of the standard that the court is to utilize is the standard that might eventually be utilized in determining whether or not the presumption of paternity has been overcome, but I don't think that the court has to and should or should apply that standard at this stage. The standard at this stage is whether or not good cause has been established. I previously indicated I did take into account, in terms of determining whether or not good cause had been established, the fact that there was no evidence suggesting that Mr. Schaffenacker was unable to procreate or that his wife was inaccessible at the time. Certainly if there was evidence to the contrary the court would have considered that as well, but it simply uses this as a matter of looking at the evidence being presented in determining whether or not there is good cause to order this discovery tool.
>
> The court previously noted that the threshold for ordering the implementation of a [Rule] 215 examination is not a particularly high one. Simply the court believes that if it is likely to lead to discoverable evidence, that good cause has been presented for its use."

¶ 12    On the day of the hearing, Brandy filed a motion requesting a contempt finding and sanctions against Anthony and Michele because neither provided the court-ordered DNA samples pursuant to the advice of their attorney. Later that month, the trial court entered an order, holding Anthony and Michele in indirect civil contempt for failing to provide the DNA samples. The court stayed Anthony and Michele's partition action as a sanction for contempt until they complied with the court order requiring them to submit to a DNA mouth swab. The court also ordered Anthony and Michele to each pay a monetary penalty of $100.

¶ 13    This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15                                    A. Jurisdiction

¶ 16    Anthony and Michele appeal the trial court's contempt order. However, the real issue in this appeal is whether the trial court erred in entering a discovery order pursuant to Supreme Court Rule 215, directing Anthony and Michele to provide DNA samples. Discovery orders are ordinarily only reviewed on appeal from a final judgment. "In Illinois, the propriety of a discovery order may be considered on appeal through the appeal of an order of contempt." *Western States Insurance Co. v. O'Hara*, 357 Ill. App. 3d 509, 514, 828 N.E.2d 842, 846 (2005).

¶ 17                        B. Trial Court Order Requiring DNA Samples

¶ 18    Anthony and Michele argue the trial court abused its discretion in ordering them to

provide DNA samples pursuant to Supreme Court Rule 215. Brandy argues the court did not err.

¶ 19                                1. *Parentage Act*

¶ 20    While the trial court based its decision to require Anthony and Michele to provide DNA samples on Supreme Court Rule 215, we first address Brandy's argument the trial court was required to order DNA tests in this case pursuant to the Illinois Parentage Act of 1984 (Act) (750 ILCS 45/1 through 11 (West 2008)). Brandy first points to section 9(a) of the Act (750 ILCS 45/9(a) (West 2008)), which states:

> "(a) The circuit courts shall have jurisdiction of an action brought under this Act. In any civil action not brought under this Act, the provisions of this Act shall apply if parentage is at issue. The Court may join any action under this Act with any other civil action where applicable."

According to Brandy, because she argues Anthony is not Howard's biological child, parentage is at issue. Brandy argues, therefore, section 11(a) of the Act (750 ILCS 45/11(a) (West 2008)) applies in this case. Section 11(a) states:

> "(a) As soon as practicable, the court or Administrative Hearing Officer in an Expedited Child Support System may, and upon request of a party shall, order or direct the mother, child and alleged father to submit to deoxyribonucleic acid (DNA) tests to determine inherited characteristics. If any party refuses to submit to the tests, the court may resolve the question of paternity against that party or enforce its order if the rights of others and the interests of justice so require." 750 ILCS 45/11(a) (West 2008).

Brandy argues the court did not have any discretion because she, as a party to the case, requested the court to require Anthony and Michele to submit to DNA tests.

¶ 21    We disagree with Brandy's argument. Section 7 of the Act controls who has standing to bring a claim to determine the existence or nonexistence of a parent-child relationship under the Act. Based on the facts in this case, Brandy would not have standing to bring an action to establish the nonexistence of Anthony and Howard's parent-child relationship. We reject the idea the General Assembly intended someone in Brandy's situation to take advantage of section 11 of the Act (750 ILCS 45/11 (West 2008)).

¶ 22    Section 1.1 of the Act specifically states the public policy behind the Act: "Illinois recognizes the right of every child to the physical, mental, emotional and monetary support of his or her parents under this Act." 750 ILCS 45/1.1 (West 2008). The Act does not allow an individual to challenge the legitimacy of her sibling in a case such as this.

¶ 23                                2. *Supreme Court Rule 215*

¶ 24    As stated previously, the trial court ordered Anthony and Michele to submit DNA samples pursuant to Supreme Court Rule 215. According to Michele and Anthony, the court should not have ordered them to provide DNA samples because of the common-law presumption of paternity. Anthony and Michele argue Brandy has not presented any evidence

suggesting Howard did not have access to Anthony's mother or that Howard was unable to procreate when Anthony was conceived. In their brief, Anthony and Michele state:

> "The presumption of legitimacy is a fundamental principle of the common law. This presumption of legitimacy could only be rebutted by proof that a husband was incapable of procreation or had no access to his wife during the period of time when a child was conceived. As explained in Blackstone, non-access could only be proved if the husband was out of the Kingdom of England or beyond the four seas for more than nine months. Further, both in England and in the United States, neither the husband nor the wife could be a witness to prove access or non-access."

Michele and Anthony argue the reasoning behind the common law's restrictions stemmed from the law's aversion to "declaring children illegitimate, thereby depriving them of rights of inheritance and succession, and making them wards of the State."

¶ 25    We recognize the presumption of legitimacy has deep roots in the common law (see *Michael H. v. Gerald D.*, 491 U.S. 111, 124 (1989) (citing 1 William Blackstone, Commentaries *456 (J. Chitty ed. 1826))). However, we also recognize these common-law presumptions evolved prior to the advent of genetic testing. Unlike today, before genetic testing, it was not possible (except in extremely rare circumstances) to definitively determine an individual's biological father. That is no longer the case.

¶ 26    However, the availability of genetic testing does not mean courts should ignore the common-law presumption of paternity. Although these presumptions arose in part because it was nearly impossible to determine as a matter of certainty who fathered a child, this was not the only reason for the presumption. The presumption also avoided the stigma of illegitimacy, preserved the integrity of the family, protected a child's inheritance rights, and insured the child had an identifiable source of financial support. *Michael H.*, 491 U.S. at 125. These concerns still exist regardless of the availability of genetic testing. Until directed to do otherwise by statute or our supreme court, we believe courts should give serious consideration to the purposes of the common-law presumption of paternity before ordering someone to submit to DNA tests in a case such as this where one sibling is trying to eliminate another sibling's inheritance.

¶ 27    Supreme Court Rule 215 has been used to require a party to submit to a DNA test. *J.S.A. v. M.H.*, 384 Ill. App. 3d 998, 1007, 893 N.E.2d 682, 690 (2008). The rule states in relevant part:

> "In any action in which the physical or mental condition of a party or of a person in the party's custody or legal control is in controversy, the court, upon notice and on motion made within a reasonable time before the trial, may order such party to submit to a physical or mental examination by a licensed professional in a discipline related to the physical or mental condition which is involved." Ill. S. Ct. R. 215(a) (eff. July 1, 2002) (since amended effective March 28, 2011).

Unfortunately, Rule 215 does not provide trial courts with guidance on how to exercise its discretion in cases like this.

¶ 28    It appears from the record the trial court struggled in determining whether to require Anthony and Michele to submit DNA samples for analysis. Before the court ordered the test,

it stated:

> "I have to say the court is fairly reluctant to ignore the rebuttal [*sic*] presumption of legitimacy, even though we are at a different stage of the proceedings, that being the discovery stage. Certainly, the [underpinnings] of that presumption still apply to some degree, and there is some importance in maintaining the presumption of legitimacy, you know, even at a discovery stage of a case, and I'm not quite sure and I haven't yet figured it out in my own mind what quantum of evidence is required at this stage to support the ordering of a [Rule] 215 examination. I think it has to be more than just a voiced suspicion. I don't know that it is dependent on the evidence, but there is some interesting issues here and the fact that this is a case of first impression is challenging."

However, the court then ordered Anthony and Michele to submit DNA samples, stating the affidavits of Brandy and Krista, respectively, "were good and sufficient cause for the Court to exercise discretion in granting the Supreme Court Rule 215(a) Motion." At the hearing on Anthony's motion to reconsider, the trial court stated: "The court previously noted that the threshold for ordering the implementation of a [Rule] 215 examination is not a particularly high one. Simply the court believes that if it is likely to lead to discoverable evidence, that good cause has been presented for its use."

¶ 29     We find the trial court erred in applying the liberal standard it used in this case. We do not agree a court should order one sibling to submit a DNA sample at another sibling's request in an effort to disinherit that sibling unless the court is presented with persuasive and credible evidence that would lead the court to believe the DNA test would result in the disinheritance. The test should not be whether the DNA analysis would likely determine whether Anthony *is* Howard's biological son. If that were the standard, courts would have little justification to ever deny a request for a DNA sample in a case similar to this one.

¶ 30     The impact of ordering a party to provide a DNA sample bears some similarities to an order allowing an evidentiary autopsy. In *Fosse v. Pensabene*, 362 Ill. App. 3d 172, 189, 838 N.E.2d 258, 274 (2005), the Second District Appellate Court discussed when it might be appropriate for a trial court to order an evidentiary autopsy pursuant to Rule 215(a). The appellate court stated " 'evidentiary autopsy cases present a panoply of legal and emotional issues and problems. Courts should not order autopsy relief too lightly, nor should they hesitate to require it when it is needed. Courts should endeavor to balance the interests of the parties, continuing to do what justice requires for both.' " *Fosse*, 362 Ill. App. 3d at 172, 838 N.E.2d at 274-75 (quoting James T.R. Jones, *Evidentiary Autopsies*, 61 U. Colo. L. Rev. 567, 624 (1990)). In determining when to order an evidentiary autopsy, the Second District in *Fosse* stated:

> "[T]he trial court must have information upon which it may adequately evaluate a motion for an autopsy. For example, such information may include what the party demanding the autopsy wants to prove, whether a strong need supports the autopsy request, and whether an autopsy is likely to disclose what the party seeks." *Fosse*, 362 Ill. App. 3d at 172, 838 N.E.2d at 275.

While not as invasive as an evidentiary autopsy, DNA exams also present an assortment of

legal and emotional issues.

¶ 31 In this case, Brandy sought the DNA exam to prove Anthony was not Howard's biological son. While Brandy apparently believes Anthony is not her full biological brother, the information provided by Brandy to support this belief was insufficient to require Anthony and Michele to submit DNA samples.

¶ 32 The only support Brandy offered for her motion for a DNA test was two affidavits, one from Brandy herself and another from Krista Kohn, who was 17 years old and lived with Brandy. Brandy's affidavit stated she overheard a conversation between her mother and her aunt six or seven years earlier during which her mother allegedly said Anthony was not Howard's son. Brandy also claimed when she was approximately 13 years old, sometime around 1990, she heard her aunt tell Howard he was not Anthony's father. However, Brandy did not provide an affidavit from her aunt or even her aunt's name. Kohn's affidavit stated Howard told her Anthony was not his son in the context of a question from Kohn concerning whether Anthony gave Howard a Father's Day gift. With the exception of these affidavits relaying hearsay statements, some of which constitute double hearsay, Brandy provided no other evidence establishing Howard was not Anthony's biological father. However, Anthony and Michele introduced the deposition testimony of their mother, who testified Anthony, Michele, and Brandy were all Howard's biological children and neither she nor Howard ever claimed Anthony was fathered by someone other than Howard. In addition, both the official and unofficial birth certificates for Anthony reflect Howard is his father.

¶ 33 Based on the record in this case, the trial court erred in ordering Anthony and Michele to provide DNA samples. Because we find the trial court erred in ordering the submission of the DNA samples, we need not address Anthony and Michele's argument regarding whether the materials collected by Brandy from Howard's residence were suitable for DNA comparison purposes in this case.

¶ 34 III. CONCLUSION

¶ 35 For the reasons stated, we reverse the trial court's contempt findings and remand the case for further proceedings.

¶ 36 Reversed and remanded.